**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| NICHOLET BOLAND, DANIELLE LANDIS, MARY LANSDALE, AMANDA LANSDELL, SANDIE LARRISON, TERESA LAWHON, ELLEN LAWRENCE, DONNA LAWSON, SHANNA LEARY, JANET LEASE, NANCY LEBOUEF, ROBIN LEDRIDGE, JENNIFER LEE, ROBIN LEHNHOFF-MCCRAY, AMY LEIKNESS, EVA LEISURE, TAMMY LESTER, DARNICE LEWIS, WENDY LEWIS, JANET LIGNEY, LENA GATMAITAN LLORIN, JANET LOLLIS Individually and as Representative of the Estate of GLORIA LOLLIS, Deceased, SELENA LOPEZ-REY, RITA LOVE, TORY LOVE, BARBARA LOVELACE, JOANNE LOWMAN, BARBARA LUEDTKE, BELINDA LUNA, LINDA LYNCH, PATRICIA MACK, WILLIET MADISON, JOAN MAGER, JENNIFER MALCOLM, SHIRLEY MALLORY, CAROL MANGIONE, MARY MANZI, ROCHELLE MARBLE, SARA MARCUM, CLAUDIA MARTIN, SHERRY MARTIN, SHIRLEY MARTIN, LINDA MARTIN-HATFIELD, IRENE MARTINEZ, JAMIE MARTINEZ, DEBORAH MASON, DOROTHY MASTERS Individually and as Representative of the Estate of PATRICIA MASTERS, Deceased, NINA MASTERSON, LUPE MATA, DONNA MATTOX, MICHELLE MAY, SUANNE MCALILEY, CARMEN MCBRIDE, JANETTE MCCOY, TAMMY MCCOY, MARGARET MCCULTY, LORRAINE MCMANUS, JACQUELINE MCMILLAN, DIXIE MCMULLEN, MARGERETTE MCNEECE, LAURIE MCPHILLIPS, IRENE MENA, ALTHEA MERRICK, CHRISTINE MESCIA, DOUGLAS METZ Individually and as Representative of the Estate of TIFFANY METZ, Deceased, TONI MILAM, BARBARA MILLER, CAROL MILLER, JOHNNIE DAVIS Individually and as Representative of | Case No. 4:21-cv-00766 |

1

the Estate of CAROLYN MILLS, Deceased, ROSE MITCHELL, BARBARA MOHROR, JENNIFER MONTALVO, JILL MOORE, LINDA MOORE, PAMULA MOORE, RUTH MOORE, DEBRA MOREIRA, ANN MORGAN, CHARLOTTE MORGAN, DONNA MORGAN, VICKIE MORRIS, WENDY MORRIS, ANDREW MUNOZ Individually and as Representative of the Estate of DELFINA MUNOZ, Deceased, REBECCA MURPHY, SONORA MURPHY, CAROL MYERS, MARIA MYERS, MINNIE NANCE, ARETHA BRYANT, MARINA NAVARRO, APRIL NEAL, ELLEN NEELD, DEBRA NELSON, HANNAH NELSON, JUDY NELSON,

    Plaintiffs,

v.

JOHNSON & JOHNSON, INC., JOHNSON & JOHNSON CONSUMER INC. f/k/a JOHNSON & JOHNSON CONSUMER COMPANIES, INC., PTI UNION, LLC, d/b/a PHARMA TECH INDUSTRIES, AND PTI ROYSTON, LLC, d/b/a PHARMA TECH INDUSTRIES,

    Defendants.

## NOTICE OF REMOVAL

Defendants Johnson & Johnson ("J&J") and Johnson & Johnson Consumer Inc. ("JJCI"), f/k/a Johnson & Johnson Consumer Companies, Inc. (collectively, the "Johnson & Johnson defendants"), by their undersigned attorneys, hereby give notice of the removal of this action, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, to the United States District Court for the Eastern District of Missouri.

This is one of thousands of cases pending in federal courts around the country, in which plaintiffs allege that the use of talc products caused their ovarian cancer. On October 4, 2016, the

Judicial Panel on Multidistrict Litigation issued an order establishing MDL No. 2738, *In re Johnson & Johnson Talcum Powder Products Marketing, Sales Practices & Products Liability Litigation*, 220 F. Supp. 3d 1356 (J.P.M.L. 2016), before Judge Freda L. Wolfson in the United States District Court for the District of New Jersey, to coordinate pretrial proceedings in these cases. The Johnson & Johnson defendants intend to seek the transfer of this action to that proceeding, and will shortly provide the MDL Panel notice of this action pursuant to the "tag-along" procedure contained in the MDL rules. In support of removal, the Johnson & Johnson defendants state as follows:

## NATURE OF THE ACTION

1. On April 15, 2021, Plaintiffs Nicholet Boland, Danielle Landis, Mary Lansdale, Amanda Lansdell, Sandie Larrison, Teresa Lawhon, Ellen Lawrence, Donna Lawson, Shanna Leary, Janet Lease, Nancy Lebouef, Robin Ledridge, Jennifer Lee, Robin Lehnhoff-Mccray, Amy Leikness, Eva Leisure, Tammy Lester, Darnice Lewis, Wendy Lewis, Janet Ligney, Lena Gatmaitan Llorin, Janet Lollis, Selena Lopez-Rey, Rita Love, Tory Love, Barbara Lovelace, Joanne Lowman, Barbara Luedtke, Belinda Luna, Linda Lynch, Patricia Mack, Williet Madison, Joan Mager, Jennifer Malcolm, Shirley Mallory, Carol Mangione, Mary Manzi, Rochelle Marble, Sara Marcum, Claudia Martin, Sherry Martin, Shirley Martin, Linda Martin-Hatfield, Irene Martinez, Jamie Martinez, Deborah Mason, Dorothy Masters, Nina Masterson, Lupe Mata, Donna Mattox, Michelle May, Suanne McAliley, Carmen McBride, Janette McCoy, Tammy McCoy, Margaret McCulty, Lorraine McManus, Jacqueline McMillan, Dixie McMullen, Margerette McNeece, Laurie McPhillips, Irene Mena, Althea Merrick, Christine Mescia, Douglas Metz, Toni Milam, Barbara Miller, Carol Miller, Johnnie Davis, Rose Mitchell, Barbara Mohror, Jennifer Montalvo, Jill Moore, Linda Moore, Pamula Moore, Ruth Moore, Debra Moreira, Ann Morgan, Charlotte Morgan, Donna Morgan, Vickie Morris, Wendy Morris, Andrew Munoz, Rebecca

Murphy, Sonora Murphy, Carol Myers, Maria Myers, Minnie Nance, Aretha Bryant, Marina Navarro, April Neal, Ellen Neeld, Debra Nelson, Hannah Nelson, and Judy Nelson (collectively, "Plaintiffs"), filed a lawsuit in the Circuit Court of St. Louis County titled *Boland v. Johnson & Johnson, Inc. et. al.*, Cause No. 21SL-CC01726, and on May 11, 2021, Plaintiffs filed the operative First Amended Petition.  (*See* First Am. Petition ("Pet.") (attached as Ex. 1).)  Plaintiffs have demanded a trial by jury.

2. Plaintiffs allege that they applied JOHNSON'S Baby Powder® and SHOWER TO SHOWER® (the "Products") to their perineal areas. (*See, e.g.*, Pet. ¶¶ 6, 161.[1])  These products contain talcum powder, which Plaintiffs claim proximately caused them or their decedents to develop ovarian cancer. (*Id.* ¶¶ 6, 164.)

3. Only one of the 95 Plaintiffs alleges to be a resident or citizen of Missouri (Nicholet Boland) (hereinafter referred to as "the Missouri Plaintiff"). (*Id.* ¶ 6.)

4. All remaining Plaintiffs allege that they "are from various states around the country" (*id.* at ¶ 7), and none of them plead any connection to Missouri whatsoever.  Plaintiffs' Petition can only be reasonably construed to assert that these 94 Plaintiffs are non-Missouri residents whose claims have no connection to Missouri.  Moreover, Plaintiffs do not allege any facts regarding their citizenship, their diagnoses, or the frequency or number of their alleged purchases or applications of talcum powder. Accordingly, their allegations are simply too vague and devoid of specific "facts" to make out a prima facie case for personal jurisdiction. *See Miller v. Nippon Carbon Co.*, 528 F.3d 1087, 1092 (8th Cir. 2008) (A "conclusory allegation is not

---

[1] The Johnson & Johnson defendants note that there appears to be an error in the First Amended Petition's numbering of paragraphs; paragraph 9 is followed by paragraph 12, skipping paragraphs 10 and 11, after paragraph 20, the First Amended Petition continues with paragraphs 10, 11, and 12, and after that, it continues with paragraph 24.  The Johnson & Johnson defendants use the numbering provided by Plaintiffs; where there are multiples of a particular numbered paragraph, the Johnson & Johnson defendants note in brackets which sequential version of each paragraph is cited.

4

enough to establish personal jurisdiction. [Plaintiff] has the burden of proving facts supporting personal jurisdiction."). As such, these Plaintiffs should be dismissed.

I. **REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.**

5. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because this is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest.

   A. **All Of The Parties Are Diverse.**

6. The Johnson & Johnson defendants are, and were at the time Plaintiffs commenced this action, corporations organized under the laws of the State of New Jersey with their principal places of business in the State of New Jersey, and are therefore citizens of the State of New Jersey for the purposes of determining diversity. 28 U.S.C. § 1332(c) (1).

7. PTI Royston, LLC ("PTI Royston") and PTI Union, LLC ("PTI Union") are incorrectly alleged by Plaintiffs to be citizens of Missouri for purposes of considering diversity jurisdiction. But, as discussed in more detail below, they are in fact, and were at the time Plaintiffs commenced this action, citizens of Georgia and Florida for purposes of determining diversity.

8. PTI Union and PTI Royston are limited liability companies ("LLCs"). The citizenship of an LLC is determined by the citizenship of its members. *See, e.g., E3 Biofuels, LLC v. Biothane, LLC*, 781 F.3d 972, 975 (8th Cir. 2015) ("An LLC's citizenship, for purposes of diversity jurisdiction, is the citizenship of each of its members.") (citation omitted); *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007) (same). The sole member of PTI Union and PTI Royston is Broadview Investments, LLC. (*See* Decl. of Edward "Tee" Noland, Jr. ("Noland Decl.") ¶ 7, Aug. 29, 2018 (attached as Ex. 2).) The sole members of Broadview Investments, LLC are four trusts: (a) the Revocable Living Trust of Edward T. Noland, Jr.; (b) the

5

Edward T. Noland, Jr. Irrevocable Gifting Trust; (c) the Laura Noland Tarrasch Revocable Trust; and (d) the Tarrasch Family Trust.  (*See* Noland Decl. ¶ 8; Decl. of Laura Tarrasch ("Tarrasch Decl.") ¶ 4, Aug. 29, 2018 (attached as Ex. 3).)

9. The citizenship of a trust is determined by the citizenship of the trustees.  *See, e.g., Schubel v. Lampland*, No. 13-1426 (PAM/JSM), 2013 WL 5787881, at \*1 (D. Minn. Oct. 28, 2013) ("[T]he citizenship of the trust is the citizenship of the trustee or trustees."); *U.S. Bank Nat'l Ass'n v. Polyphase Elec. Co.*, No. 10-4881 (DWF/LIB), 2011 WL 3625102, at \*1 (D. Minn. Aug. 17, 2011) ("[B]ecause a trust is not an entity that can sue and be sued, the trustee's citizenship is what matters for the purposes of diversity jurisdiction.") (citation omitted); *Williams v. Nat'l Credit Adjusters*, LLC, No. 4:14-CV-267-CAS, 2014 WL 5823457, at \*2 (E.D. Mo. Nov. 10, 2014) (diversity jurisdiction existed in a case involving trusts where "the citizenship of the trustees … of the two trusts were diverse from plaintiff"); *Algiers Develop. Dist. v. Vista La., LLC*, No. 16-16402, 2017 WL 121127, at \*3 (E.D. La. Jan. 12, 2017) ("If it is a traditional trust, its citizenship is determined by the trustee's citizenship.").  The trustees of each trust in this case are citizens of Georgia and Florida.  (*See* Noland Decl. ¶¶ 2, 10 (stating Tee Noland, a "citizen of the State of Georgia," is the "sole trustee of the Revocable Living Trust of Edward T. Noland, Jr."); *id*. ¶ 12 (stating Kimberly Noland, a "citizen and resident of Athens, Georgia," "is the sole trustee of the Edward T. Noland, Jr. Irrevocable Gifting Trust"); Tarrasch Decl. ¶ 6 (stating Grant McKay, a "citizen and resident of Collier County, Florida," "is the sole trustee of the Laura Noland Tarrasch Revocable Trust"); Tarrasch Decl. ¶¶ 6, 8 (stating Grant McKay, a "citizen and resident of Collier County, Florida," "is the sole trustee of the Tarrasch Family Trust").).  Accordingly, PTI Union and PTI Royston are citizens of Florida and Georgia for purposes of assessing diversity jurisdiction.

10. This is consistent with Judge Wolfson's June 29, 2020 Order and Opinion in the MDL. There, Judge Wolfson considered the fact that Grant McKay became the sole trustee of the Laura Noland Tarrasch Revocable Trust and the Tarrasch Family Trust on June 6, 2018, and June 11, 2018, respectively. After analyzing legal principles dictating citizenship of an LLC, Judge Wolfson concluded that after June 6, 2018 (as to PTI Union) and after June 11, 2018 (as to PTI Royston), PTI Union and PTI Royston were citizens of Florida and Georgia, for diversity purposes. *Hannah, et al., v. Johnson & Johnson, et al.*, No. 3:18-cv-01422-FLW-LGH, 2020 WL 3497010, at *3, *25 (D.N.J. June 29, 2020).

11. As noted above, the only Plaintiff who alleges her citizenship is Nicholet Boland, who alleges to be a Missouri resident. As explained above, Plaintiff Boland is completely diverse from the Johnson & Johnson Defendants (citizens of New Jersey for diversity purposes), PTI Union (citizen of Florida and Georgia for diversity purposes), and PTI Royston (citizen of Florida and Georgia for diversity purposes). None of the others Plaintiffs allege any citizenship and, thus, none of the Plaintiffs allege citizenship that is non-diverse with the citizenship of any of the Defendants. Thus, there is complete diversity between the parties.[2]

12. Accordingly, this Court should exercise subject matter jurisdiction over this Petition.

---

[2] To the extent Plaintiffs challenge this removal by tardily claiming that certain Plaintiffs do in fact share citizenship with certain Defendants, such a claim would not defeat this removal. First, "[i]t is axiomatic the court's jurisdiction is measured either at the time the action is commenced or, more pertinent to this case, at the time of removal." *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822 (8th Cir. 2011) (citations omitted). As such, the face of the operative petition governs the propriety of the removal. Regardless, and as discussed below, even if certain Plaintiffs tardily claim to share citizenship with any of Defendants, removal is still proper because this Court lacks personal jurisdiction over the non-Missouri residents claims. Additionally and alternatively, and as explained further below, the Court should evaluate the propriety of the removal based on the citizenship of each separate plaintiff, and severance under Rule 21 of the Federal Rules of Civil Procedure is appropriate.

**B.     The Court Should Dismiss All Claims Except Those Brought By the Missouri Plaintiff Boland for Lack Of Personal Jurisdiction.**

13.     Although the other Plaintiffs (besides Ms. Boland) do not allege their particular states of citizenship, they do generally allege that they "are from various states around the country" (*Id.* at ¶ 7). And none of these other Plaintiffs plead any connection to Missouri whatsoever. Plaintiffs' Petition can only be reasonably construed to assert that all the other 94 Plaintiffs (other than Ms. Boland) are non-Missouri residents whose claims have no connection to Missouri. This Court should dismiss for lack of personal jurisdiction the claims asserted by all Plaintiffs except the Missouri Plaintiff Boland (including the claims of any Plaintiffs who may tardily claim citizenship of New Jersey, Georgia, or Florida) because they fail to allege any meaningful connection between their purported injuries and any alleged conduct by the Johnson & Johnson defendants, PTI Royston, or PTI Union in the State of Missouri.

14.     *First*, the Johnson & Johnson defendants, PTI Royston, and PTI Union are not subject to general jurisdiction in Missouri under the exacting standards the U.S. Supreme Court set forth in *Daimler AG v. Bauman*, 571 U.S. 117 (2014) and reiterated in *BNSF Railway Co. v. Tyrrell*, 137 S. Ct. 1549 (2017). Under *Daimler*, a defendant is only subject to general jurisdiction in the forum state if its contacts with that state "are ***so constant and pervasive 'as to render [it] essentially at home in the forum State***.'" 571 U.S. at 122 (alternation in original) (emphasis added) (citation omitted).

15.     A corporation generally is "at home" only in its place of incorporation and principal place of business. *Id.* at 137; *see also Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 223 (2d Cir. 2014) (per curiam) (stating that *Daimler* "reaffirms that general jurisdiction extends beyond an entity's state of incorporation and principal place of business only in the ***exceptional case*** where its contacts with another forum are so substantial as to render it 'at home'

8

in that state") (emphasis added).  Likewise, a limited liability company "will only be subjected to general jurisdiction in the state of its organization and principal place of business." *Miller v. Native Link Constr., LLC*, No. 15-1605, 2017 WL 3536175, at *30 (W.D. Pa. Aug. 17, 2017) (citing *Finn v. Great Plains Lending, LLC*, No. 15-4658, 2016 WL 705242, at *3 (E.D. Pa. Feb. 23, 2016)).  In other words, "in-state business . . . does not suffice to permit the assertion of general jurisdiction." *BNSF*, 137 S. Ct. at 1559; *see also State ex rel. Norfolk S. Ry. Co. v. Dolan*, 512 S.W.3d 41, 48 (Mo. 2017) ("[The Defendant's] activities in Missouri are only a very small part of its overall activities, and not of the nature that makes Missouri its de facto principal place of business.  Missouri courts may not assert general jurisdiction over [the defendant] in the underlying case.").

16.     Here, none of the properly joined Defendants is incorporated or headquartered in Missouri, as Plaintiffs acknowledge in their Petition.  (*See* Pet. ¶¶ 8, 12[1], 14, 17.)  Plaintiffs' boilerplate allegations that the Johnson & Johnson defendants "regularly transacted, solicited, and conducted business in all States of the United States, including the State of Missouri" do not come close to establishing general jurisdiction.  (*Id.* ¶¶ 9, 13.)

17.     To the extent Plaintiffs seek to manufacture jurisdiction over the Johnson & Johnson defendants with their half-hearted assertion that PTI Union functioned as their agent and therefore that the Johnson & Johnson defendants are "derivatively liable" for its conduct (*see, e.g.*, *id.* ¶¶ 47-48), this claim is foreclosed by the Supreme Court's rejection in *Daimler* of the practice of imputing jurisdictional contacts on the basis of a mere "agency" relationship.  571 U.S. at 134-35; *see also Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co.*, 646 F.3d 589, 596 (8th Cir. 2011) (noting that, even before *Daimler*, a broad conception of agency jurisdiction was "inconsistent with [Eighth Circuit] precedent").

18.     Plaintiffs' effort to impute PTI Union's jurisdictional contacts onto PTI Royston under an alter-ego theory (*e.g.*, Pet. ¶ 36) also fails.  Assuming that an alter-ego theory of personal

9

jurisdiction is cognizable after *Daimler*, such a theory would only apply where one company "so controlled and dominated the affairs of the [affiliated company] that the latter's corporate existence was disregarded." *Viasystems*, 646 F.3d at 596 (citation omitted). "A [company] may be directly involved in the activities of its [affiliated companies] without submitting to jurisdiction." *See Velez v. Portfolio Recovery Assocs., Inc.*, 881 F. Supp. 2d 1075, 1084 (E.D. Mo. 2012). Rather "[t]he alter ego test is satisfied only where 'the record indicates that [one company] dictates ***every facet*** of the [other company's] business—from broad policy decisions ***to routine matters of day-to-day operation***.'" *Id.* at 1084-85 (emphases added) (citation omitted); *see also Prominent GmbH v. Prominent Sys., Inc.*, No. 2:16-cv-01609, 2017 U.S. Dist. LEXIS 54078, at *25 (W.D. Pa. Apr. 10, 2017) ("[T]he *sine qua non* of an alter ego relationship is ***daily, operational*** control.") (emphasis added); *Leadford v. Bull Moose Tube Co.*, No. 15-cv-13565, 2016 WL 4089130, at *3 (E.D. Mich. Aug. 2, 2016) ("While [the parent] does hold [the subsidiary] out as an arm of [the parent], merely doing business as a parent entity does not make a subsidiary an alter-ego of the parent company."); *Blanks v. Fluor Corp.*, 450 S.W.3d 308, 374-76 (Mo. App. 2014) (laying out high standard to pierce the corporate veil under Missouri law).

19. In this case, Plaintiffs allege nothing more than those factors typical to affiliated company relationships, that are not enough to pierce the corporate veil, such as common branding, *see Prominent GmbH*, 2017 U.S. Dist. LEXIS 54078, at *30-31, coordinated management and strategy, *see In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig.*, 735 F. Supp. 2d 277, 323-24 (W.D. Pa. 2010), general oversight, *see Velez*, 881 F. Supp. 2d at 1084, and that PTI Royston holds itself out as a Pharma Tech entity, *see Leadford*, 2016 WL 4089130, at *3.

20. ***Second***, Defendants are also not subject to specific jurisdiction in Missouri as to the claims of the Plaintiffs who do not allege the requisite connection between their claims and the Defendants' supposed activities in Missouri. Specific jurisdiction can only be exercised consistent

with due process where the defendant's in-state activities have "give[n] rise to the liabilities sued on." *Daimler*, 571 U.S. at 138 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)); *see also Denton v. Air Liquid Sys. Corps.*, No. 13-cv-1243-SMY-DGW, 2015 WL 738659, at *1 (S.D. Ill. Feb. 19, 2015) ("Specific jurisdiction arises where an out-of-state 'defendant has "purposefully directed" his activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to those activities."'") (citations omitted); *Guillette v. PD-RX Pharm. Inc.*, No. 5:15-cv-00564-R, 2016 WL 3094073, at *5 (W.D. Okla. June 1, 2016) ("Plaintiffs must show some 'true causal element' between the defendants' contacts and the litigation.") (citation omitted).  Moreover, the exercise of specific jurisdiction must not be "unreasonable." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 116 (1987) (plurality opinion).

21.     Plaintiffs' allegations regarding the contacts between the Johnson & Johnson defendants, PTI Union, PTI Royston, and the forum do not meet this standard.  The great bulk of Plaintiffs' non-conclusory allegations relate to nothing more than contractual relationships and cooperation between Johnson & Johnson defendants and PTI Union on projects relevant to the production of talcum powder generally.  As Judge Webber explained in *Jinright v. Johnson & Johnson, Inc.*, No. 4:17CV01849 ERW, 2017 WL 3731317 (E.D. Mo. Aug. 30, 2017), another talc case, such relationships at best "show[] . . . a connection with a third party in Missouri.  That is not enough to create specific jurisdiction for nonresidents' claims." *Id.* at *5.  Indeed, as the *Jinright* court noted, much the same theory was rejected by the Supreme Court, which referred to an allegation that the defendant had contracted with an in-state distributor as a "last ditch contention" that "is not enough to establish personal jurisdiction." *Bristol-Myers Squibb Corp. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1783 (2017).  The other purported connections between this case, the out-of-state defendants, and the forum fare no better.  For example, Plaintiffs'

11

allegations that talcum powder was marketed or tested in Missouri (*see* Pet. ¶¶ 9, 13, 25) do not suffice to create the necessary nexus. *See Dyson v. Bayer Corp.*, No. 4:176CV2584 SNLJ, 2018 WL 534375, at *4 (E.D. Mo. Jan. 24, 2018) (holding that "marketing and clinical trials" cannot create specific jurisdiction where the plaintiffs at issue "did not see marketing in Missouri . . . did not purchase [the products] in Missouri, and were not injured . . . in Missouri"). And while Plaintiffs allege that a "varietal" of talcum powder – i.e., Shimmer Effects™ – was manufactured in Union, Missouri (*see* Pet. ¶¶ 53, 55, 74), they do not allege that they or their decedents ever used that product.

22.     Moreover, the United States Supreme Court's ruling in *Bristol-Myers* forecloses any effort by a plaintiff to manufacture jurisdiction by joining her claims with those – made by a different plaintiff – that do have some sufficient relation to the forum. As the Court explained:

> The mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims. . . . This remains true even when third parties (here, the plaintiffs who reside in California) can bring claims similar to those brought by the nonresidents. . . . What is needed—and what is missing here—is a connection between the forum and the specific claims at issue.

137 S. Ct. at 1781.

23.     Lest there be any doubt as to the applicability of these precedents to this litigation, both state and federal courts in Missouri have found personal jurisdiction to be lacking over out-of-state plaintiffs' claims in multi-plaintiff talcum powder actions just like this one. *See Jinright*, 2017 WL 3731317, at *5 (dismissing non-resident plaintiffs' claims and, thereafter, denying motion to remand); *Estate of Fox v. Johnson & Johnson*, 539 S.W.3d 48, 52 (Mo. Ct. App. 2017) (vacating judgement in multi-plaintiff trial for lack of personal jurisdiction).

24.     This case is no different from *Jinright* or *Fox* because only the Missouri Plaintiff alleges the requisite connection between her claims and the State of Missouri to establish personal

jurisdiction over the defendants. As *Bristol-Myers* recognized, the mere fact that the other plaintiffs have joined their claims with those of the Missouri plaintiff, or that they have alleged some non-case-specific contacts between the out-of-state defendants and the forum, does not suffice to give rise to personal jurisdiction over their claims. *See Bristol-Myers*, 137 S. Ct. at 1782-83; *see also Jinright*, 2017 WL 3731317, at *5. Accordingly, Defendants are not subject to personal jurisdiction in Missouri for any of the claims brought by Plaintiffs who do not allege that they or their decedents purchased or used talcum powder in Missouri.

25. ***Third***, this Court may decide the issue of personal jurisdiction before making a final determination as to whether it has subject matter jurisdiction. The Supreme Court has explained that "there is no unyielding jurisdictional hierarchy," and that after a case is removed, the federal court may decide a "straightforward personal jurisdiction issue presenting no complex question of state law" prior to deciding whether it has subject matter jurisdiction. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578, 588 (1999); *see also Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (explaining that "there is no mandatory 'sequencing of jurisdictional issues'" and that "[i]n appropriate circumstances . . . a court may dismiss for lack of personal jurisdiction without first establishing subject-matter jurisdiction") (quoting and citing *Ruhrgas*, 526 U.S. at 578, 584). This is precisely what other federal courts have long done, and all the more so now that *Bristol-Myers* has clarified the law on personal jurisdiction in multi-plaintiff cases.

26. Since the twin decisions in *Bristol-Myers*, 137 S. Ct. at 1781, and *Norfolk Southern Railway Co.*, 512 S.W.3d at 50, judge after judge in this District has concluded that "the issue of personal jurisdiction 'is now the more straightforward inquiry'" and addressed it first. *Hinton v. Bayer Corp.*, No. 4:16CV1679 HEA, 2018 WL 3725776, at *2 (E.D. Mo. July 27, 2018) (citation

omitted) (collecting cases).³  For instance, *Jinright* – a multi-plaintiff action involving some in-state plaintiffs and other out-of-state plaintiffs – was filed in City of St. Louis state court against many of the same defendants that have been named in this case.  The defendants removed to federal court and promptly objected to the exercise of personal jurisdiction as to the claims of the non-Missouri plaintiffs.  Judge Webber agreed and addressed the personal jurisdiction issue first, reasoning that "[r]emanding this case for lack of complete diversity only to have the case removed again later once the non-Missouri plaintiffs are dismissed, would be a waste of judicial resources.  Ruling [on] personal jurisdiction first is in the interests of judicial economy and expeditiousness."  2017 WL 3731317, at *2.  The court, therefore, dismissed the non-Missouri plaintiffs, before retaining jurisdiction over the now-completely diverse parties.  *See id.* at *5.  *See also, e.g.*, *Dyson*, 2018 WL 534375 at *1, *3-4 (finding that the court lacked personal jurisdiction over 92 plaintiffs who were not Missouri citizens and then retaining diversity jurisdiction over the claims of the three plaintiffs who were Missouri citizens because "personal jurisdiction remains the more straightforward inquiry"); *Turner v. Boehringer Ingelheim Pharm., Inc.*, No. 4:17-cv-01525-AGF, 2017 WL 3310696, at *2 (E.D. Mo. Aug. 3, 2017) (To "decide the issue of personal jurisdiction first" "now reflects the better course.").

27. Alternatively, the Court should evaluate the propriety of the removal "based on the citizenship of each separate plaintiff."  *See Hannah,* No. 3:18-cv-01422-FLW-LGH, 2020 WL 3497010, at *7 ("Because the Court decides whether remand is appropriate based on the citizenship of each separate plaintiff, as discussed supra, the Court has categorized them into three classes, since the legal questions raised in each class are identical . . . .").  In conducting this analysis, the

---

³ Courts across the country – including judges in this District – regularly ruled on personal jurisdiction before subject matter jurisdiction even before *Bristol-Myers*.  *See, e.g.*, *Beard v. SmithKline Beecham Corp.*, No. 4:15-CV-1833 RLW, 2016 WL 1746113, at *2 (E.D. Mo. May 3, 2016); *In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proceedings*, 164 F. Supp. 3d 1040, 1049-50 (N.D. Ill. 2016), *reconsidered in part on other grounds*, No. 14 C 1748, 2016 WL 861213 (N.D. Ill. Mar. 7, 2016).

Court may apply Rule 21 of the Federal Rules of Civil Procedure to sever each plaintiff's claims from the multi-plaintiff complaint in the instant action and, accordingly, treat each individual plaintiff separately for the removal analyses. *See id.* at *6-7 ("sever[ing] each plaintiff's claims from the multi-plaintiffs' complaints" pursuant to Rule 21 and, thus, "treat[ing] each individual plaintiff separately for the analyses," including the analysis regarding plaintiff's motion to remand). This is precisely the manner in which Judge Wolfson addressed similarly structured multi-plaintiff talc complaints removed from St. Louis courts to the Talc MDL. The Johnson & Johnson Defendants thus hereby include in this filing a motion for severance under Rule 21, alternatively seeking relief consistent with Judge Wolfson's MDL Opinion.

28. If the Court applies Rule 21 then, consistent with Judge Wolfson's opinion, the Court should sever each Plaintiff's claim. The result remains that all Plaintiffs are completely diverse from Defendants. Accordingly, the Court may exercise subject matter jurisdiction over all Plaintiffs' claims and retain all of those claims in federal court (to be transferred to the MDL).[4]

29. In sum, the Court should dismiss the claims of all other Plaintiffs (other than Plaintiff Boland) for lack of personal jurisdiction. Moreover, because the only properly considered Plaintiff is a citizen of Missouri (namely, Nicholet Boland, as she is the only Plaintiff who alleges citizenship at all), the Johnson & Johnson defendants are citizens of New Jersey, and PTI Royston and PTI Union are citizens of Florida and Georgia, all proper parties are completely diverse. The Court may also sever each Plaintiff's claim pursuant to Rule 21 in evaluating this removal.

    **C.**    **The Amount in Controversy Exceeds $75,000.**

30. Missouri Plaintiff Boland alleges that she developed ovarian cancer as a result of applying "talcum powder" products to her perineal area. She also claims that she was "injured

---

[4] In the event this Court remands any claims without addressing address personal jurisdiction, the Johnson & Johnson Defendants reserve their right to seek dismissal for lack of personal jurisdiction in state court.

15

catastrophically and ha[s] been caused severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort and economic damages." (*See, e.g.*, Pet. ¶ 164; *see also id.* ¶ 192 (claiming that Plaintiff "was caused to incur medical bills, lost wages, and conscious pain and suffering"); *see also id.* ¶ 239 (claiming damages for negligent misrepresentation, including "severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care and comfort, and economic damages").) Plaintiffs also request punitive damages (*id.* ¶¶ 245-47), which are included in the amount in controversy. *See Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240 (1943) ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining [the] jurisdictional amount.").

31. Where, as here, a plaintiff alleges serious bodily injuries and/or chronic or permanent medical conditions, courts have readily found that the amount-in-controversy requirement is satisfied. *See, e.g., Allmon v. Walgreens Co.*, No. 4:09 CV 1151 DDN, 2010 WL 1292172, at *1 (E.D. Mo. Apr. 5, 2010) (amount-in-controversy requirement was satisfied where plaintiff alleged "extreme weight loss, stunted growth, menstrual problems, ovarian cysts, and diabetes"); *Quinn v. Kimble*, 228 F. Supp. 2d 1038, 1041 (E.D. Mo. 2002) (finding that a jury could award more than $75,000 "given that plaintiffs suffered head, neck, and back injuries; incurred medical expenses and will incur further such expenses; have permanent, progressive, and disabling injuries"; and alleged lost wages).

## II. THE JOHNSON & JOHNSON DEFENDANTS HAVE COMPLIED WITH ALL REMOVAL PROCEDURES.

32. The Johnson & Johnson defendants timely remove this action pursuant to 28 U.S.C. § 1446(b).

33. The Circuit Court for St. Louis County, Missouri is located within the Eastern District of Missouri. *See* 28 U.S.C. § 105(a)(1). Therefore, venue for this action is proper in this Court because the Eastern District of Missouri is the "district and division embracing the place where such action is pending." *See id.* § 1441(a).

34. Pursuant to Local Rule 81-2.03 and 28 U.S.C. § 1446(a), copies of all process, pleadings, orders, and other documents on file with the Circuit Court for St. Louis County are attached hereto as Exhibit 4.

35. Co-defendant PTI Royston, LLC's consent to this Notice of Removal is attached hereto as Exhibit 5. Co-defendant PTI Union's consent to this Notice of Removal is attached hereto as Exhibit 6.

WHEREFORE, the Johnson & Johnson defendants respectfully remove this action from the Circuit Court of St. Louis County, in the State of Missouri, bearing cause number 21SL-CC01726, to this Court.

Dated: June 25, 2021   Respectfully submitted,

**HEPLERBROOM LLC**

By: */s/* M. Elizabeth Dyer Kellett
Beth A. Bauer, #49981MO
M. Elizabeth Dyer Kellett, #64954MO
130 N. Main Street
PO Box 510
Edwardsville, IL 62025
(618) 656-0184
bab@heplerbroom.com
edk@heplerbroom.com

*Attorneys for Johnson & Johnson and Johnson & Johnson Consumer Inc., formerly known as Johnson & Johnson Consumer Companies, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of June, 2021, a true and correct copy of the foregoing document was served upon the following via the Court's electronic notification system and/or electronic mail:

Craig Anthony Schlapprizzi
DONALD L. SCHLAPPRIZZI, P.C.
211 N. Broadway, Ste. 2430
St. Louis, MO 63102
(314) 241-0763
craig@schlaprrizzipc.com

Jennifer A. Lenze
LENZE LAWYERS, PLC
1300 Highland Ave., Ste. 207
Manhattan Beach, CA 90266
(310)322-8800
jlenze@lenzelawyers.com

Mark P. Robinson, Jr.
Kevin F. Calcagnie
ROBINSON CALCAGNIE, INC.
19 Corporate Plaza Drive
Newport Beach, CA 92660
(949) 720-1288
mrobinson@robinsonfirm.com
kcalcagnie@robinsonfirm.com

*Attorneys for Plaintiffs*

Caroline M. Tinsley
**TUCKER ELLIS LLP**
100 South 4th St., Suite 600
St. Louis, MO 63102
(314) 256-2550
caroline.tinsley@tuckerellis.com

*Attorneys for Defendant PTI Union, LLC and PTI Royston, LLC*

*/s/* M. Elizabeth Dyer Kellett