**21SL-CC01726**

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

## IN THE CIRCUIT COURT OF CITY OF ST. LOUIS
## STATE OF MISSOURI

| | | |
|---|---|---|
| NICHOLET BOLAND | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DANIELLE LANDIS | ) | Cause No. |
| | ) | |
| and | ) | Division: |
| | ) | |
| MARY LANSDALE | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| and | ) | |
| | ) | |
| AMANDA LANSDELL | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SANDIE LARRISON | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TERESA LAWHON | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ELLEN LAWRENCE | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DONNA LAWSON | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SHANNA LEARY | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JANET LEASE | ) | |
| | ) | |
| and | ) | |
| | ) | |
| NANCY LEBOUEF | ) | |
| | ) | |

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

and                                                    )
                                                       )
ROBIN LEDRIDGE                                         )
                                                       )
and                                                    )
                                                       )
JENNIFER LEE                                           )
                                                       )
and                                                    )
                                                       )
ROBIN LEHNHOFF-MCCRAY                                  )
                                                       )
and                                                    )
                                                       )
AMY LEIKNESS                                           )
                                                       )
and                                                    )
                                                       )
EVA LEISURE                                            )
                                                       )
and                                                    )
                                                       )
TAMMY LESTER                                           )
                                                       )
and                                                    )
                                                       )
DARNICE LEWIS                                          )
                                                       )
and                                                    )
                                                       )
WENDY LEWIS                                            )
                                                       )
and                                                    )
                                                       )
JANET LIGNEY                                           )
                                                       )
and                                                    )
                                                       )
LENA GATMAITAN LLORIN                                  )
                                                       )
and                                                    )
                                                       )
JANET LOLLIS INDIVIDUALLY AND AS                       )
REPRESENTATIVE OF THE ESTATE OF                        )
GLORIA LOLLIS , DECEASED,                              )
and                                                    )

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

SELENA LOPEZ-REY    )
                    )
and                 )
                    )
RITA LOVE           )
                    )
and                 )
                    )
TORY LOVE           )
                    )
and                 )
                    )
BARBARA LOVELACE    )
                    )
and                 )
                    )
JOANNE LOWMAN       )
                    )
and                 )
                    )
BARBARA LUEDTKE     )
                    )
and                 )
                    )
BELINDA LUNA        )
                    )
and                 )
                    )
LINDA LYNCH         )
                    )
and                 )
                    )
PATRICIA MACK       )
                    )
and                 )
                    )
WILLIET MADISON     )
                    )
and                 )
                    )
JOAN MAGER          )
                    )
and                 )
                    )
JENNIFER MALCOLM    )

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

|  |  |
|---|---|
| and | ) |
| SHIRLEY MALLORY | ) |
| and | ) |
| CAROL MANGIONE | ) |
| and | ) |
| MARY MANZI | ) |
| and | ) |
| ROCHELLE MARBLE | ) |
| and | ) |
| SARA MARCUM | ) |
| and | ) |
| CLAUDIA MARTIN | ) |
| and | ) |
| SHERRY MARTIN | ) |
| and | ) |
| SHIRLEY MARTIN | ) |
| and | ) |
| LINDA MARTIN-HATFIELD | ) |
| and | ) |
| IRENE MARTINEZ | ) |
| and | ) |
| JAMIE MARTINEZ | ) |
| and | ) |

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

| | |
|---|---|
| DEBORAH MASON | ) |
| | ) |
| and | ) |
| | ) |
| DOROTHY MASTERS INDIVIDUALLY | ) |
| AND AS REPRESENTATIVE OF THE | ) |
| ESTATE OF PATRICIA MASTERS, | ) |
| DECEASED, | ) |
| | ) |
| and | ) |
| | ) |
| NINA MASTERSON | ) |
| | ) |
| and | ) |
| | ) |
| LUPE MATA | ) |
| | ) |
| and | ) |
| | ) |
| DONNA MATTOX | ) |
| | ) |
| and | ) |
| | ) |
| MICHELLE MAY | ) |
| | ) |
| and | ) |
| | ) |
| SUANNE MCALILEY | ) |
| | ) |
| and | ) |
| | ) |
| CARMEN MCBRIDE | ) |
| | ) |
| and | ) |
| | ) |
| JANETTE MCCOY | ) |
| | ) |
| and | ) |
| TAMMY MCCOY | ) |
| | ) |
| and | ) |
| | ) |
| MARGARET MCCULTY | ) |
| | ) |
| and | ) |

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

| | |
|---|---|
| LORRAINE MCMANUS | ) |
| and | ) |
| JACQUELINE MCMILLAN | ) |
| and | ) |
| DIXIE MCMULLEN | ) |
| and | ) |
| MARGERETTE MCNEECE | ) |
| and | ) |
| LAURIE MCPHILLIPS | ) |
| and | ) |
| IRENE MENA | ) |
| and | ) |
| ALTHEA MERRICK | ) |
| and | ) |
| CHRISTINE MESCIA | ) |
| and | ) |
| DOUGLAS METZ INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF TIFFANY METZ, DECEASED, | ) |
| and TONI MILAM | ) |
| and | ) |
| BARBARA MILLER | ) |
| and CAROL MILLER | ) |

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

and )
 )
JOHNNIE DAVIS INDIVIDUALLY AND AS )
REPRESENTATIVE OF THE ESTATE OF )
CAROLYN MILLS , DECEASED, )
 )
and )
 )
ROSE MITCHELL )
 )
and )
 )
BARBARA MOHROR )
 )
and )
 )
JENNIFER MONTALVO )
 )
and )
 )
JILL MOORE )
 )
and )
 )
LINDA MOORE )
 )
and )
 )
PAMULA MOORE )
 )
and )
 )
RUTH MOORE )
 )
and )
 )
DEBRA MOREIRA )
 )
and )
 )
ANN MORGAN )
 )
and )
 )
CHARLOTTE MORGAN )

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

and ))

DONNA MORGAN ))

and ))

VICKIE MORRIS ))

and ))

WENDY MORRIS ))

and ))

ANDREW MUNOZ INDIVIDUALLY AND
AS REPRESENTATIVE OF THE ESTATE OF
DELFINA MUNOZ , DECEASED, )))

and ))

REBECCA MURPHY ))

and ))

SONORA MURPHY ))

and ))

CAROL MYERS ))

and ))

MARIA MYERS ))

and ))

MINNIE NANCE ))

and ))

ARETHA BRYANT ))

and ))

MARINA NAVARRO )

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

|  |  |
|---|---|
| and | ) |
|  | ) |
| APRIL NEAL | ) |
|  | ) |
| and | ) |
|  | ) |
| ELLEN NEELD | ) |
|  | ) |
| and | ) |
|  | ) |
| DEBRA NELSON | ) |
|  | ) |
| and | ) |
|  | ) |
| HANNAH NELSON | ) |
|  | ) |
| and | ) |
|  | ) |
| JUDY NELSON | ) |
|  | ) |
| Plaintiffs, | ) |
| v. | ) |
|  | ) |
| JOHNSON & JOHNSON, INC., | ) |
|  | ) |
| Serve:  M.J. Ullman | ) |
| One Johnson & Johnson Plaza | ) |
| New Brunswick, New Jersey 08933 | ) |
|  | ) |
| and | ) |
|  | ) |
| JOHNSON & JOHNSON CONSUMER, INC. | ) |
| f/k/a JOHNSON & JOHNSON CONSUMER | ) |
| COMPANIES, INC., | ) |
|  | ) |
| Serve: Johnson & Johnson Registered Agent | ) |
| One Johnson & Johnson Plaza | ) |
| New Brunswick, New Jersey 08933 | ) |
|  | ) |
| and | ) |
|  | ) |
| PTI UNION, LLC, d/b/a PHARMA TECH | ) |
| INDUSTRIES, | ) |
|  | ) |
|  | ) |

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

| | |
|---|---|
| Serve:  Benson, Thomas L., III | ) |
|         12444 Powerscourt Drive, Suite 400 | ) |
|         St. Louis, MO 63131 | ) |
| | ) |
| and | ) |
| | ) |
| PTI ROYSTON, LLC, d/b/a PHARMA | ) |
| )TECH INDUSTRIES, | ) |
| | ) |
| Serve:  Benson, Thomas L., III | ) |
|         12444 Powerscourt Drive, Suite 400 | ) |
|         St. Louis MO 63131 | ) |
| | ) |
|                    Defendants. | ) |
| | ) |

## **PETITION**

COME NOW Plaintiffs, by and through their undersigned counsel, and for their cause of action against Defendants Johnson & Johnson, Johnson & Johnson Consumer Incorporated, PTI Union, LLC, d/b/a Pharma Tech Industries and PTI Royston LLC d/b/a Pharma Tech Industries, alleging the following upon information and belief (including investigation made by and through Plaintiffs' counsel), except those allegations that pertain to Plaintiffs, which are based on personal knowledge:

## **INTRODUCTION**

1.       Plaintiffs bring this cause of action against Defendants pursuant to Rule 52.05(a) of the Missouri Rules of Civil Procedure, as their claims arise out of the same series of transactions and occurrences, and their claims involve common questions of law and/or fact. All claims in this action are a direct and proximate result of Defendants' and/or their corporate predecessors' negligent, willful, and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distribution, labeling and/or sale of the products known as Johnson & Johnson Baby Powder and Shower to Shower (hereinafter "the PRODUCTS"). All

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

Plaintiffs in this action seek recovery for damages as a result of developing ovarian cancer, which was directly and proximately caused by such wrongful conduct by Defendants, the unreasonably dangerous and defective nature of talcum powder and other carcinogenic contaminants within the talcum powder, and the attendant effects of developing ovarian cancer. All of the claims involve common legal and medical issues.

2.     The PRODUCTS contain, and have contained for decades, dangerous and deadly carcinogens that are extremely hazardous to human health. They cause ovarian cancer and other deadly cancers. These known carcinogens are talc and elements that naturally occur with talc, such as asbestos, asbestiform fibers, arsenic, heavy metals, and other elements. Plaintiffs herein all used or were exposed for years to the PRODUCTS containing dangerous talc, asbestos fibers, asbestiform fibers such as fibrous talc, and heavy metals, and developed devastating ovarian cancer.

3.     Defendants have known for decades the PRODUCTS contain these dangerous carcinogens that cause ovarian cancer. Yet, Defendants have blatantly lied, and continue to lie, to consumers of the PRODUCTS, including Plaintiffs, government regulators and public health officials, the scientific and medical communities, and the public about the contents of the PRODUCTS and the dangerous health hazards from exposures to these PRODUCTS.

4.     Defendants must be held accountable to Plaintiffs for failing to warn of and otherwise causing Plaintiffs' ovarian cancers from exposure to the harmful talc, asbestos, asbestiform fibers, heavy metals, and other dangerous carcinogens in the PRODUCTS.

5.     This Court has personal jurisdiction over Defendants for each of these claims due to Defendants' substantial suit-related contacts with Missouri Plaintiffs' claims arose out of and/or relate to Defendants' PRODUCTS that were developed, manufactured, tested, labeled,

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

bottled, shipped, distributed, sold, promoted advertised, and marketed by Defendants and their agents, in and coordinated and directed from Missouri. Plaintiffs' claims therefore derive from and are connected with Defendants' Missouri contacts as more fully detailed herein.

## PARTIES

6.     Plaintiff NICHOLET BOLAND is a citizen of the City of Ozark, State of Missouri. At all pertinent times, including from approximately 1990'S to 2021, Plaintiff NICHOLET BOLAND purchased and applied talcum powder in the State of Missouri. In or around 2013, Plaintiff NICHOLET BOLAND was diagnosed with ovarian cancer, which developed in the State of Missouri. Plaintiff NICHOLET BOLAND developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff NICHOLET BOLAND has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff NICHOLET BOLAND has otherwise been damaged in a personal and pecuniary nature.

7.     All remaining plaintiffs are from various states around the country and allege identical injuries

8.     Defendant, Johnson & Johnson, is a New Jersey corporation with its principal place of business in the State of New Jersey.

9.     At all relevant times, Johnson & Johnson was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing the PRODUCTS. At all

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

relevant times, Johnson & Johnson regularly transacted, solicited, and conducted business in all States of the United States, including the State of Missouri.

12.     Defendant Johnson & Johnson Consumer Incorporated[1] is a New Jersey corporation with its principal place of business in the State of New Jersey.

13.     At all relevant times, Johnson & Johnson Consumer Incorporated was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing the PRODUCTS.  At all relevant times, Johnson & Johnson Consumer Incorporated regularly transacted, solicited, and conducted business in all States of the United States, including the State of Missouri.

14.     Defendant PTI Union, LLC is a Delaware Limited Liability Company. Defendant PTI Union, LLC's members include one or more residents and citizens of the State of Missouri, such that Defendant PTI Union, LLC is a citizen of Missouri.

15.     At all relevant times, Defendant PTI Union, LLC has been in the business of processing, bottling, labeling, packaging, and/or distributing talcum powder based products, including the PRODUCTS, these activities taking place in whole or in part at Defendant PTI Union, LLC's manufacturing facility in Union, Missouri.

16.     At all relevant times, Defendant PTI Union, LLC was acting at the direction of or on behalf of the Johnson & Johnson Defendants and/or PTI Royston, LLC carrying out a common plan, scheme, or conspiracy, acting within the course & scope of its employment or agency.

---

[1]  All allegations regarding actions taken by Johnson & Johnson Consumer, Inc. also include actions taken while that entity was known as Johnson & Johnson Consumer Companies, Inc.

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

17.    Defendant PTI Royston, LLC is a Delaware Limited Liability Company. Defendant PTI Royston, LLC's members include one or more residents and citizens of the State of Missouri, such that Defendant PTI Royston, LLC is a citizen of Missouri.

18.    At all relevant times, Defendant PTI Royston, LLC has been in the business of processing, bottling, labeling, packaging, and/or distributing talcum powder based products, including the PRODUCTS, these activities taking place in whole or in part at Defendant PTI Royston, LLC's manufacturing facility in Union, Missouri.

19.    At all relevant times, Defendant PTI Royston, LLC was acting at the direction of or on behalf of the Johnson & Johnson Defendants and/or PTI Union, LLC carrying out a common plan, scheme, or conspiracy, acting within the course & scope of its employment or agency.

20.    At all relevant times, all Defendants were engaged in the research, development, manufacture, design, testing, sale and marketing of PRODUCTS, and introduced such PRODUCTS into interstate commerce with knowledge and intent that such PRODUCTS be sold in all States, including the States of California, Florida, Illinois, Massachusetts, Michigan, Missouri, Montana, New York, Ohio, South Dakota, Texas and Washington.

## **VENUE**

10.    RSMo § 508.010, Missouri's general venue statute provides:

Notwithstanding any other provision of law, in all actions in which there is any count alleging a tort and in which the plaintiff was first injured in the state of Missouri, venue shall be in the county where the plaintiff was first injured by the wrongful acts or negligent conduct alleged in the action.

RSMo § 508.010.4.

11.    Plaintiff Nicholet Boland, was living in City of St. Louis when she first used the PRODUCTS, and therefore was "first injured by the wrongful acts or negligent conduct

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

alleged" in this action in City of St. Louis, Missouri. Therefore, venue is proper pursuant to RSMo § 508.010.4.

12.    Venue is further proper in this Court pursuant to RSMo § 508.010.4 because Plaintiff Nicholet Boland, at all relevant times, purchased, used, and was exposed to the PRODUCTS in City of St. Louis, Missouri.

## **PERSONAL JURISDICTION**

24.    This lawsuit and Defendants' liabilities arise from and relate to the Johnson & Johnson Defendants', Defendant PTI Union, LLC's and Defendant PTI Royston, LLC's contacts with the forum of the State of Missouri.

25.    Defendants purposefully affiliated themselves with the forum of the State of Missouri giving rise to the underlying controversy. Such purposeful availment and activities within and related to the State of Missouri included, but are not limited to, the Johnson and Johnson Defendants' contractual and agency relationship with Defendant Pharma Tech giving rise to the supply, manufacturing, production, testing, mispackaging, processing, mislabeling, and bottling of the PRODUCTS in the State of Missouri and being controlled and directed from the State of Missouri; agreements between Defendants and entities within State of Missouri regarding the PRODUCTS where Defendants contractually consented to have state courts within the State of Missouri adjudicate disputes; marketing and advertising of the PRODUCTS by Defendants targeted specifically to the State of Missouri as opposed to the Nation as a whole; messaging by Defendants targeted at the State of Missouri regarding the PRODUCTS in response to previous jury verdicts in this Court regarding the PRODUCTS; strategic planning and marketing in and from the State of Missouri pertaining to all of the PRODUCTS nationwide; agreements and other arrangements between Defendants and hospitals and other healthcare providers specific to the State of Missouri where, for example, expectant and post-partum mothers were provided gift baskets containing the PRODUCTS; tradeshows and other promotional activities by Defendants

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

with regard to the PRODUCTS targeted specifically to the State of Missouri; lobbying, consulting, and advisory efforts on behalf of Defendants with regard to the PRODUCTS stemming from law firms and other agents in the State of Missouri; and other actions by Defendants targeted to the State of Missouri to be obtained through discovery and other means.

26.     The Johnson & Johnson Defendants and Defendant Pharma Tech enjoyed the benefits and revenues associated with these activities in and spawning from Missouri.

27.     As the location from which Defendants' suit-related conduct arose out of, Missouri has a substantial vested interest in the acts of Defendants which led to the underlying controversy.

28.     As set forth above and as further detailed herein, there are numerous activities and occurrences that took place in and from the State of Missouri such that the Johnson & Johnson Defendants and Defendant Pharma Tech are subject to the State of Missouri's regulation.

29.     The issues to be adjudicated in this lawsuit derive from and are connected with these contacts, activities, and occurrences in the State of Missouri.

30.     The State of Missouri has contacts and connections giving rise to all Plaintiffs' claims herein.

31.     In fact, the State of Missouri has the most significant and meaningful contacts and connections and the strongest affiliation with the underlying controversy of all States in the Union.

32.     The State of Missouri has a strong interest, let alone a legitimate interest, in proceeding with the cause of action of all Plaintiffs, given all Plaintiffs' claims arise from and

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

relate to the Defendants' dealings specific to the PRODUCTS in coordination, at relevant times, almost exclusively with Missouri citizens and Missouri companies.

33.     The Johnson & Johnson Defendants and Defendant Pharma Tech have engaged in activities and occurrences that took place in and were directed to the State of Missouri that during relevant periods and with the help of Missouri citizens and companies created the defect in all of the PRODUCTS and gave rise to all Plaintiffs' claims.

34.     It cannot come as any surprise to the Johnson & Johnson Defendants to be haled to the Missouri forum given how instrumental Missouri was and remains in the supply, manufacture, processing, testing, quality control/regulatory compliance, bottling, mislabeling, packaging, distribution, marketing, and advertising of the PRODUCTS.

35.     Missouri companies and citizens, acting in and from Missouri, on behalf of, for the benefit of, and as agents of the Johnson & Johnson Defendants and Defendant Pharma Tech have been responsible for the manufacture, processing, testing, bottling, mislabeling, distribution, and, thereby, downstream sale of the PRODUCTS use by Plaintiffs going back to at least 2005.

36.     These Missouri companies and citizens, serving as the Johnson & Johnson Defendants' and Defendant Pharma Tech's Missouri-based conduit for developing, manufacturing, processing, testing, bottling, packaging, mislabeling, distributing, marketing, advertising, promoting, and selling the PRODUCTS are Defendant Pharma Tech Industries, Inc., Defendant PTI Union, LLC, Defendant PTI Royston, LLC, Amerinet, Midwest Medical Supply, LCW/Sensient Cosmetics Technologies, Wunderlich Fibre Box Company, and Hallmark Cards, Incorporated, together with their respective Missouri members, employees, and agents.

37.     The Defendants are clearly not burdened by litigating in the Missouri forum.

### The Johnson & Johnson Defendants' Missouri Manufacturer

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

38.    Defendant Pharma Tech Industries, Inc., was a Missouri corporation with its principal place of business in Missouri. At all times pertinent hereto, Pharma Tech Industries, Inc.'s nucleus of operations and control center was through its headquarters in Union, Missouri, as was that of its successors, affiliates, and assigns.

39.    Defendant Pharma Tech Industries, Inc.'s Missouri roots go back to 1972 when it was founded in Union, Missouri. It provided full-service contract manufacturing and packaging services to the pharmaceutical industry and grew to be the largest pharmaceutical contract manufacturer and packager of powder products. The Defendants' business and agency relationships with the company has always been specifically related to Defendants' talc and the PRODUCTS, and thus is and was specific to the issues herein.

40.    By 1993, Pharma Tech Industries, Inc. controlled the production of 90% of the branded over the counter topical powder market. It eventually became producer of the world's supply of Johnson's Baby Powder. As an industry leader, Defendant Pharma Tech Industries, Inc. exercised operational control over the United States' Talc production market.  Such operational control arose out of its nerve center in Union, Missouri. Plaintiffs' causes of action herein arose out of Defendants' activities in Missouri by and through their agency relationship with Defendant Pharma Tech Industries, Inc. and its successors and assigns.

41.    From 2005 to 2008, from Defendant Pharma Tech Industries, Inc.'s nerve center in Union, Missouri, it operated, oversaw, and directed manufacturing facilities for all of the PRODUCTS in Union, Missouri, and Royston, Georgia.

42.    Defendant PTI Union, LLC, was and is a citizen of the State of Missouri, with its principal place of business in Union, Missouri, as successor to Pharma Tech Industries, Inc. From 2008 to present, from its nerve center in Union, Missouri, it has operated, overseen, and

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

directed manufacturing facilities for all the PRODUCTS in both Union, Missouri and Royston, Georgia.

43.    At all pertinent times hereto, Defendant PTI Royston, LLC, was and is a citizen of the State of Missouri, with its purported principal place of business in Royston, Georgia. As further detailed herein, Defendant PTI Royston, LLC's actual principal place of business at relevant times was and is Union, Missouri, by merger, dominion and control, agency, and/or its alter ego status.

44.    The Johnson & Johnson Defendants were well aware their business dealings in relation to the supply, testing, manufacture, bottling, mislabeling, and distribution of all of the PRODUCTS has been entirely and exclusively with Missouri citizens for the past 14 years, during which time the Plaintiffs were exposed to the PRODUCTS.

45.    The Johnson & Johnson Defendants engaged in relevant acts affiliated with the Missouri forum individually and/or together with Defendant Pharma Tech Industries, Inc., PTI Union, LLC, and PTI Royston, LLC (at times collectively "Pharma Tech"), in relation to the supply, testing, manufacture, bottling, mislabeling, and distribution of the PRODUCTS.

46.    Defendant Pharma Tech is and always has been a closely, privately held company that spawns from one Missouri family, among whom the companies remain privately held and controlled.

47.    Defendant Pharma Tech at all relevant times conspired with, acted in concert with, as the agent of, and under the direction of the Johnson & Johnson Defendants. The defective and dangerous PRODUCTS which were manufactured, produced and distributed throughout the United States without warnings of the ovarian cancer hazard and/or not using a safer alternative to talc such as cornstarch, arose from and was connected with Defendants' conduct with the forum state of

19

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

Missouri based on the activities detailed herein with and derivative of Pharma Tech, thus giving rise to an actionable conspiracy and concert of action.

48.    The Johnson & Johnson Defendants are not only liable for their own conduct, but also derivatively liable for the conduct of Defendant Pharma Tech.

49.    At times relevant hereto, the Johnson & Johnson Defendants engaged in business with Missouri resident and citizen, Edward T. Noland, acting in and from Missouri, in his capacities as owner, member, shareholder, CEO, and President of Pharma Tech, which facilitated the manufacture, processing, testing, bottling, mislabeling, and distribution of all of the PRODUCTS.

50.    The Missouri affiliated business dealings between the Johnson & Johnson Defendants with Defendant Pharma Tech, and their owners, members, shareholders, CEO, President, employees and agents that created the defect at in all the PRODUCTS has taken place over the past 14 years and continues to this day.

51.    Well before Pharma Tech Industries, Inc. began producing the PRODUCTS, Imerys Talc America, Inc., f/k/a Luzenac America, Inc. (hereinafter described as "Imerys Talc" or "Imerys Talc America, Inc.") contemplated its future with the Missouri corporation specific to the PRODUCTS. For instance, a Luzenac America Call Report of July 16, 1998, identifying Edward T. "Ted" Noland as the contact for Luzenac customer Pharma Tech Industries, Inc., P.O. Box 638, 1310 Stylemaster Drive, Union, MO 63084, notes Noland is Pharma Tech's owner and only salesperson making "proposal to fill for J and J, which could have serious ramifications for [Luzenac] potentially." The ramifications would prove to be tens of millions of dollars in revenue flowing from Pharma Tech to Imerys.

52.    At certain times relevant hereto prior to 2004, the Johnson & Johnson Defendants

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

had manufactured all of the PRODUCTS at their facility in Royston, Georgia.

53.    In 2004, Missouri corporation Defendant Pharma Tech Industries, Inc., also began manufacturing, processing, testing, bottling, mislabeling, and distributing one of the several varieties of the PRODUCTS, Shower to Shower, Shimmer Effects, at its manufacturing facility and principal place of business in Union, Missouri, in coordination with, for, and as agents of the Johnson & Johnson Defendants.

54.    Imerys Talc America, Inc., sold and shipped thousands of pounds of talc to Pharma Tech's facilities in both Union, Missouri and Royston, Georgia for use in manufacturing, processing, testing, bottling, mislabeling, and distributing of the PRODUCTS.

55.    With inception in 2004, this venture, whereby this varietal of the PRODUCTS was manufactured, processed, tested, bottled, mislabeled and distributed in and from Union, Missouri, using talc supplied to Union, Missouri by Imerys, continued through at least 2008 and the bottles produced in Union, Missouri were marketed by the Johnson & Johnson Defendants and sold to consumers into at least 2010.

56.    In 2004, Johnson & Johnson also engaged in negotiations and executed a letter of intent for the sale of its powder facility in Royston, Georgia, and the subsequent outsourcing of powder operations to Pharma Tech Industries, Inc.  The letter of intent, amendments thereto, and written communications between the parties were sent to and from Pharma Tech Industries, Inc.'s Ted Noland in Union, Missouri.

57.    In 2005, an asset purchase took place between Defendant Johnson & Johnson Consumer Incorporated, and Missouri corporation Pharma Tech Industries, Inc., whereby Pharma Tech Industries, Inc. acquired the Royston, Georgia facility and certain other assets specific to production of Johnson's Baby Powder and Shower to Shower, i.e., the PRODUCTS. In doing so,

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

and as further detailed, Defendant Johnson & Johnson Consumer Incorporated, again specifically directed its activities in relation to the PRODUCTS to the Missouri forum.

58.    In April 2005, the Asset Purchase Agreement was executed on behalf of Defendant Johnson & Johnson Consumer Incorporated, by its Vice President of Strategic Sourcing and on behalf of Missouri citizen Pharma Tech Industries, Inc., with principal place of business in Union, Missouri, by its President, Edward T. Noland, also a Missouri citizen.

59.    Pursuant the terms of the Asset Purchase Agreement, Missouri corporation Pharma Tech Industries, Inc., with principal place of business in Union, Missouri, assumed the liabilities, including product liability claims, relating specifically to the PRODUCTS manufactured at the Royston, Georgia facility from and after the date of closing on the asset purchase.

60.    Said assumption of liabilities was a material term to the contract, without which Missouri corporation Defendant Pharma Tech Industries, Inc., with principal place of business in Union, Missouri, would have been unable to acquire the interest in the PRODUCTS and maintain that interest in administering their production going forward.

61.    The terms of the Asset Purchase Agreement provided for Missouri corporation Pharma Tech Industries, Inc., with principal place of business in Union, Missouri, to retain certain employees, formerly of Defendant Johnson & Johnson Consumer Incorporated who had been, in part, responsible for the operation of the Royston facility, after the date of closing.

62.    The terms of the Asset Purchase Agreement defined the term "Business Day" as any day other than a Saturday, a Sunday, or a day on which banks in New York City, New York, or **St. Louis, Missouri,** are authorized or obligated by law or executive order to not open or remain closed.

63.    The terms of the Asset Purchase Agreement provided for Missouri corporation

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

Pharma Tech Industries, Inc., with principal place of business in Union, Missouri, to make quarterly payments to Defendant Johnson & Johnson Consumer Incorporated following closing, until the aggregate purchase price was satisfied.

64.    Thereafter, Missouri corporation Pharma Tech Industries, Inc., with principal place of business in Union, Missouri, did in fact make said quarterly payments to Defendant Johnson & Johnson Consumer Incorporated, ensuring the ongoing production of all of the PRODUCTS, as further detailed herein.

65.    Notices and other communications contemplated under the Asset Purchase Agreement directed by Defendant Johnson & Johnson Consumer Incorporated, to Missouri corporation Pharma Tech Industries, Inc., were to be provided to Pharma Tech Industries, Inc.'s principal place of business at 1310 Stylemaster Drive, P.O. Box 638, Union, Missouri 63084, with copy to its Missouri counsel.

66.    The terms of the Asset Purchase Agreement provided Missouri corporation Pharma Tech Industries, Inc., with principal place of business in Union, Missouri, could assign the Asset Purchase Agreement or some or all of the assets and assumed liability to an affiliate of Pharma Tech Industries, Inc., provided that Pharma Tech Industries, Inc., would remain at all times responsible and liable to Defendant Johnson & Johnson Consumer Incorporated, for all of Pharma Tech Industries, Inc.'s obligations and agreements under the Agreement and Pharma Tech Industries, Inc., was to provide a Written Guarantee to Defendant Johnson & Johnson Consumer Incorporated.

67.    Said assumption of liabilities and Written Guarantee were material terms to the contract, without which Missouri corporation Pharma Tech Industries, Inc., would have been unable to acquire the interest and maintain it as a going concern, by virtue of PTI Royston, LLC.

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

68.     Likewise, the Johnson & Johnson Defendants were relying on Missouri corporation Pharma Tech Industries, Inc., with principal place of business in Union, Missouri, to guarantee payment in satisfaction of the interests specifically pertaining to the PRODUCTS, regardless of corporate status or controlling interest of any assignee. In other words, Missouri corporation Pharma Tech Industries, Inc., with principal place of business in Union, Missouri, was the head of the snake in reference to the manufacture, processing, testing, bottling, mislabeling, and distribution of all of the PRODUCTS from the date of closing on the Asset Purchase Agreement forward.

69.     Prior to the closing on the Asset Purchase Agreement, PTI Royston, LLC, was formed June 16, 2005, as a Delaware Limited Liability Company with its stated principal place of business in Royston, Georgia. The company was formed to act as agent, affiliate, assignee, shell company, and alter-ego of Pharma Tech Industries, Inc. to facilitate the business interests of the Missouri corporation in relation to operation of the Royston, Georgia facility upon closing on the Asset Purchase Agreement.

70.     At all times Missouri citizen Pharma Tech Industries, Inc., was acting as agent of the Johnson & Johnson Defendants. At all times Missouri citizen Pharma Tech Industries, Inc., was the principal of its agent, affiliate, assignee, shell company, and alter-ego, PTI Royston, LLC. Further, PTI Royston, LLC, was at the time of creation and continues to this day to be a Missouri citizen, as defined by the citizenship of its parent company's four members.

71.     Missouri citizen Edward T. Noland was owner of Missouri citizen Pharma Tech Industries, Inc., with principal place of business in Union, Missouri. He and Pharma Tech Industries, Inc. exercised dominion and control over PTI Royston, LLC and the operations in Georgia at the mandate of the Johnson & Johnson Defendants.

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

72. The closing on the Asset Purchase Agreement between Defendant Johnson & Johnson Consumer Incorporated, and Missouri corporation Pharma Tech Industries, Inc., with principal place of business in Union, Missouri, took place in August 2005.

73. Also in August 2005, Defendant Johnson & Johnson Consumer Incorporated, entered into a Manufacturing and Supply Agreement with Missouri corporation Pharma Tech Industries, Inc., with principal place of business in Union, Missouri, wherein Pharma Tech Industries, Inc., is identified as "Manufacturer" and Defendant Johnson & Johnson Consumer Incorporated as "Buyer."

74. As acknowledged in writing in the Manufacturing and Supply Agreement and as executed by their representative therein, the Johnson & Johnson Defendants viewed Missouri corporation Pharma Tech Industries, Inc., with principal place of business in Union, Missouri, as the their "manufacturer" going forward, for purposes of the entire U.S. market manufacturing, processing, testing, bottling, mislabeling, and distribution of the PRODUCTS, considering the already existing venture wherein one varietal of Shower to Shower was already being manufactured in Union, Missouri.

75. The Manufacturing and Supply Agreement defined certain "Noland Entities" as Missouri corporation Pharma Tech Industries, Inc.'s affiliates for purposes of assignment of the Manufacturing and Supply Agreement.

76. PTI Royston, LLC, was defined in the Manufacturing and Supply Agreement as a Noland Entity / Pharma Tech Industries, Inc., affiliate.

77. A Written Guarantee was executed at the time by Missouri corporation Pharma Tech Industries, Inc.'s President, Edward T. Noland, himself a Missouri resident and citizen, in favor of Defendant Johnson & Johnson Consumer Incorporated, under the terms discussed

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

above whereby Missouri corporation Pharma Tech Industries, Inc., with principal place of business in Union, Missouri, maintained primary, direct, and immediate responsibility for PTI Royston, LLC's liabilities, to include product liabilities arising from the manufacture of Johnson's Baby Powder and Shower to Shower, i.e., the PRODUCTS.

78.    Following the closing on the Asset Purchase Agreement and pursuant the terms of the Manufacturing and Supply Agreement and separate Supply Agreement that included Imerys, all of the PRODUCTS were manufactured at either the Union, Missouri and Royston, Georgia facilities from 2005 to 2008.

79.    In September 2005, Pharma Tech, identifying the headquarters of its Royston, Georgia facility as Union, Missouri entered into a Supply Agreement with Johnson & Johnson and Imerys for the supply of all talc for use in all of the PRODUCTS.

80.    In 2006 and continuing to this day, Imerys began providing a Material Safety Data Sheet (MSDS) with its shipments of talc. These MSDSs accompanied talc Imerys sent to the facilities in both Royston, Georgia, and Union, Missouri. The MSDS expressly warned workers that the International Association for Research on Cancer has concluded that "perineal use of talc-based body powders is possibly carcinogenic to humans."

81.    Pharma Tech, it's Missouri citizen, owner, and President, Edward T. Noland, along with their managers, employees, and/or agents, disregarded and discarded the warnings and production of the PRODUCTS continued, landing in the hands of unsuspecting consumers without the vary warning that the workers were given the benefit of despite perineal application being a known and intended use of the PRODUCTS.

82.    PTI Union, LLC, was formed November 13, 2007. PTI Union, LLC, and PTI Royston, LLC, are and at relevant times were sister companies with common ownership, such

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

that there is and always has been a unity of interest between the companies.

83.    By "April 1, 2008, Pharma Tech Industries, Inc. ("PTI") in Union, MO [had] merge[d] (on paper only) with [its] related operation in Royston Georgia," with the combined company doing business as "Pharma Tech Industries."

84.    The merger "streamlined[d] top management of the two companies," such that there was a unity of control over the two companies and all of the PRODUCTS. The shared top management and members of the companies included Missouri citizens who controlled, directed, and/or oversaw the business operations taking place in Royston, Georgia.

85.    The Johnson & Johnson Defendants and Imerys were well aware of and the Johnson & Johnson Defendants required the participation, control, direction, and oversight by these Missouri citizens, as well as the merger and streamlining of management between the two companies.

86.    The foregoing was all in accords with the terms of the Asset Purchase Agreement and Manufacturing and Supply Agreement, and Supply Agreement between Defendant Johnson & Johnson Consumer Incorporated, Imerys, and Pharma Tech Industries.

87.    Missouri citizen and resident Edward T. Noland, Chairman and CEO, Pharma Tech Industries, notified customers, to include Imerys, then known as Luzenac (Rio Tinto Minerals), of the merger via letter of April 1, 2008.

88.    The letter was on letterhead identifying Pharma Tech Industries' principal place of business as 1310 Stylemaster Drive, Union, MO 63084. This is an adoption of the Union, Missouri, address as the combined Pharma Tech Industries' principal place of business / principal office by and on behalf of PTI Royston, LLC, the Union, Missouri location having already been formally registered as the principal place of business for Pharma Tech Industries,

Inc., and PTI Union, LLC.

89.    In the letter Imerys, a/k/a Luzenac, was provided an executed Missouri Department of Revenue, Taxation Bureau, Sales/Use Tax Exemption Certificate, claiming exemption from sales/use tax under Missouri law. Thereafter, all the talc sold by Imerys and purchased by Pharma Tech Industries for use in all of the PRODUCTS, to include the talc sent to Royston, Georgia, was claimed by Imerys to be tax exempt by virtue of the exemption under Missouri law, thereby further expressly availing itself to the laws and regulations of the State of Missouri specifically in relation to all of the PRODUCTS.

90.    The purchaser on the Sales/Use Tax Exemption is identified as PTI Union, L.L.C., such that it was the surviving entity of the merger between PTI Union, LLC, and PTI Royston, LLC, with principal place of business in Union, Missouri. Imerys knew PTI Union, LLC, was thereby responsible for all of the PRODUCTS or, alternatively, Imerys knew PTI Royston, LLC, had effectively adopted Union, Missouri, as its principal place of business.

91.    Pharma Tech Industries thereafter operated with a single EIN number and Missouri Tax ID Number. Accordingly, PTI Royston, LLC, was operating with, under, and by virtue of a Missouri Tax ID Number, with the Johnson & Johnson Defendants and Imerys having knowledge and benefits of same.

92.    Imerys extended corporate credit to Pharma Tech Industries based on PTI Union, LLC's FEIN number to purchase all of the talc used in the manufacture, processing, testing, labeling, bottling and distribution of all of the PRODUCTS in both Union, Missouri, and Royston, Georgia.

93.    The Manufacturing and Supply Agreement between Defendant Johnson & Johnson Consumer Incorporated, and Missouri corporation Pharma Tech Industries, Inc., was

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

amended effective June 23, 2008, with the parties to the amended agreement identified as "Buyer and PTI Royston, LLC, a Delaware limited liability company, as assignee of Pharma Tech Industries, Inc., and a Noland Entity."

94.     Many high-level strategy meetings in relation to all of the PRODUCTS have taken place between the Johnson & Johnson Defendants, Imerys, and Pharma Tech in Union, Missouri.

95.     Additionally, the Royston facility relied upon ongoing synergies between the labs in Royston and Union, Missouri to improve efficiencies in the testing, quality control, regulatory compliance, and manufacturing of the all of the PRODUCTS, of which the Johnson & Johnson Defendants and Imerys were aware.

96.     The Johnson & Johnson Defendants, Imerys, and Defendant Pharma Tech Industries, Inc. has included product development and marketing efforts in Missouri for the PRODUCTS. For instance, the Union facility manufactured samples of Shower to Shower Sport, a varietal of the PRODUCTS. Similarly, the Union, Missouri facility manufactured the pilot batch of Johnson's Baby Powder Cooling Cucumber Melon, a newly developed varietal of the PRODUCTS, with talc shipped to Union by Imerys.

97.     The Union headquarters also participated in quality control and compliance efforts with, on behalf of, and under the direction of the Johnson & Johnson Defendants and Imerys. For instance, Johnson's Baby Powder allegedly manufactured in was sent to and held at the Union headquarters to be maintained on behalf of the Johnson & Johnson Defendants and Imerys as historical product samples.

98.     The Pharma Tech's Union, Missouri headquarters also handled product testing efforts for the Johnson & Johnson Defendants and Imerys that ran to quality control efforts

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

pertaining to the safety, or lack thereof, of all of the PRODUCTS. For instance, Pharma Tech in Missouri shipped samples of Imerys-supplied talc and tricalcium phosphate to labs "to be tested per Johnson & Johnson micro protocol." The testing documents themselves identify two Union, Missouri addresses for Pharma Tech.

99.    With respect to the PRODUCTS manufactured at Pharma Tech's Royston, Georgia facility, the Johnson & Johnson Defendants directed Pharma Tech in Missouri to oversee and control the Johnson's Baby Powder operations and expressly contracted with the Missouri corporation in Union to guarantee the Royston facility's performance.

100.    To the extent there is any distinction between PTI Union, LLC, and PTI Royston, LLC, they were engaged by the Defendants to work together in processing, manufacturing, testing, bottling, mislabeling, packaging, and/or distributing all of the PRODUCTS.

101.    At all pertinent times, Pharma Tech Industries, Inc., and/or PTI Union, LLC, their Missouri President, CEO, shareholders, members, management, and/or employees exercised a high degree of oversight, direction, and control over both the Georgia and Missouri facilities in relation to the manufacture, processing, testing, bottling, mislabeling, and distribution of all of the PRODUCTS, which was a requirement of the Johnson & Johnson Defendants.

102.    To the extent there is any distinction between the companies, PTI Union, LLC's and PTI Royston, LLC's nucleus of operations and control center was through their manufacturing facility in Union, Missouri, and its members acting out of that control center in relation to the processing, manufacturing, testing, bottling, labeling, packaging, and/or distributing of all of the PRODUCTS, of which the Johnson & Johnson Defendants and Imerys were aware.

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

103.    PTI Union, LLC, and PTI Royston, LLC, are one company, despite registration as separate limited liability companies. There is no true corporate distinction between the two companies, as corporate formalities of typical limited liability companies are not followed, of which the Johnson & Johnson Defendants and Imerys were aware.

104.    At times relevant hereto, PTI Royston, LLC, and PTI Union, LLC, have operated as a combined company, with PTI Union, LLC, having its principal place of business in Union, Missouri, being the surviving entity of the merger, of which the Johnson & Johnson Defendants and Imerys were aware.

105.    PTI Royston, LLC, and PTI Union, LLC, do business collectively as Pharma Tech Industries and PTI Royston, LLC, and PTI Union, LLC, refer to themselves as a single company, Pharma Tech Industries, of which the Johnson & Johnson Defendants and Imerys were aware.

106.    In 2004, the Johnson & Johnson Defendants began sending talc intended for use in the PRODUCTS to Pharma Tech Industries, Inc. for testing. Testing documents show the talc was shipped from Luzenac, Imerys' predecessor, to Pharma Tech Industries, Inc. in Missouri. Johnson & Johnson is identified in the testing documents as the customer and instructs that the "[s]amples be tested...per J&J method." The test results were reported from Missouri.

107.    The Johnson & Johnson Defendants and Imerys contracted with and routinely dealt with employees and management of PTI Union, LLC, and its predecessor, Pharma Tech Industries, Inc. in relation to the operation of the Georgia facility.

108.    The Johnson & Johnson Defendants and Imerys routinely dealt with PTI Union, LLC's and PTI Royston, LLC's shared upper management and shared employees in Union, Missouri in relation to all of the PRODUCTS.

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

109.    Johnson & Johnson Defendants and Imerys clearly understood PTI Union, LLC, and PTI Royston, LLC, to have a unity of ownership and interest.

110.    The Johnson & Johnson Defendants and Imerys knew PTI Union, LLC, and PTI Royston, LLC do not follow corporate formalities of traditional limited liability companies, such that the distinction as separate limited liability companies is a fiction.

### Strategic Planning in Missouri

111.    The Johnson & Johnson Defendants and Imerys have developed their strategic plans specific to the PRODUCTS in Missouri.

112.    Johnson & Johnson conducted Johnson's Baby Powder meeting in Missouri, engaged in market research in Missouri, and entered into agreements for the marketing, distribution, and sale of Johnson's Baby Powder with Missouri entities.

113.    In 2007, Johnson & Johnson and Pharma Tech held an inter-company steering committee meeting in Union, Missouri, which was attended by Johnson & Johnson representatives.

114.    In 2008, Johnson & Johnson interviewed "[a]dult women who use [b]aby [p]owder" in St. Louis.

115.    Johnson & Johnson tested the sale of its baby products on an endcap at a K-Mart store in St. Louis.

116.    Johnson & Johnson entered into agreements with Amerinet, a group purchasing organization ("GPO") based in St. Louis, Missouri, for the sale of Johnson's Baby Powder to hospitals and health agencies nationwide.

117.    Johnson & Johnson sold Johnson's Baby Powder through Midwest Medical Supply, a nationwide GPO distributor headquartered in Earth City, Missouri.

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

118.    These GPO sales are a "strategically critical component" of Johnson & Johnson's Baby Powder business. Johnson & Johnson studies reveal "[t]here is a measurable retail sales impact from [Johnson's Baby Powder]...being present in hospitals."

119.    In December 2014, meetings between Imerys Talc America, Inc., and Pharma Tech Industries were held in Union, Missouri, wherein Imerys' representatives flew into St. Louis, Missouri, to meet with "Curtis Coyle, VP Operations and General Manager, of Pharmatech for both Royston, Georgia and Union, Missouri" regarding Imerys' forecasted sales to Pharma Tech Industries of "10M lbs or 5000 short tons [of talc] this year, a typical year for JnJ's flagship talc baby powder brand."

120.    In 2015, Johnson & Johnson entered into a Co-Promotion Agreement with Hallmark Cards, Incorporated, a Missouri Corporation.

**Product Ingredients Sourced from Missouri**

121.    The Johnson & Johnson Defendants contracted with a Missouri company to source one of the ingredients for Shower to Shower.

122.    A coloring agent, Violet Dye #2, used in Shower to Shower was manufactured by LCW/Sensient Cosmetic Technologies of St. Louis Missouri.

**Product Packaging from Missouri**

123.    The Johnson & Johnson Defendants and Pharma Tech contracted with a Missouri company to develop the packaging materials for the PRODUCTS.

124.    Pharma Tech and Johnson & Johnson contracted with a Missouri company, Wunderlich Fibre Box Company, to manufacture packaging materials per Johnson & Johnson's specifications beginning in 2004.

**Regulatory Compliance in Missouri**

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

125.     The Johnson & Johnson Defendants and Imerys relied on regulatory compliance measures specific to the PRODUCTS that were undertaken in Missouri and as facilitated from Missouri.

126.     For instance, a Luzenac Industrial Sales Activity Report for the week of September 19, 2005 commencing Pharma Tech Industries, Union, MO, with contact "Ted Noland, President" indicates the "incorporation of the Royston facility into the Pharmtech organization is going well and there are ongoing "synergies between the labs in Royston and Union that will improve efficiencies" in regards to "cGMP and FDA procedures and regulations."

## ALLEGATIONS COMMON TO ALL COUNTS

127.     Talc is a magnesium trisilicate that is mined from the earth. It is an inorganic mineral.

128.     The PRODUCTS are composed almost entirely of talc.

129.     At all relevant times, a feasible alternative to the PRODUCTS has existed. Cornstarch is an organic carbohydrate that is quickly broken down by the body with no known health effects. Cornstarch powders have been sold and marketed for the same uses with nearly the same effectiveness as the PRODUCTS.

130.     At all relevant times, Imerys Talc mined the talc contained in the PRODUCTS.

131.     At all relevant times, Imerys Talc continually advertised and marketed talc as safe for human use.

132.     At all relevant times, the Johnson & Johnson Defendants advertised and marketed their "Johnson's Baby Powder" product as a symbol of "freshness" and "comfort," eliminating friction on the skin, absorbing "excess wetness" to keep skin feeling dry and comfortable, and

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

"clinically proven gentle and mild." The Johnson & Johnson Defendants induced women through advertisements to dust themselves with this product to mask odors. The Johnson's Baby Powder bottle specifically targets women, stating: "For you, use every day to help feel soft, fresh, and comfortable." At all relevant times, the Johnson & Johnson Defendants did not disclose any potential risks or health hazards associated with the PRODUCTS to the consuming public.

133.     At all relevant times, the Johnson & Johnson Defendants advertised and marketed their "Shower to Shower" product as safe for use by women as evidenced in its slogan, "A sprinkle a day keeps odor away," and through advertisements such as: "Your body perspires in more places than just under your arms. Use SHOWER to SHOWER to feel dry, fresh, and comfortable throughout the day;" and "SHOWER to SHOWER can be used all over your body." The website owned, maintained, and operated by the Johnson & Johnson Defendants includes the suggested use of the product "Shower to Shower" in the genital area with the following: "Soothe Your Skin: Sprinkle on problem areas to soothe skin that has been irritated from friction. Apply after a bikini wax to help reduce irritation and discomfort."

134.     Plaintiffs used the PRODUCTS to dust their perineums for feminine hygiene purposes. This was an intended and foreseeable use of the PRODUCTS based on the advertising, marketing, and labeling of the PRODUCTS.

135.     Upon information and belief, in or about 1971, a study was conducted by Dr. WJ Henderson and others in Cardiff, Wales, which found an association between talc and ovarian cancer.

136.     Upon information and belief, in or about 1982, an epidemiologic study was performed on talc powder use in the female genital area. That study was conducted by Dr. Daniel Cramer and others. This study found a ninety-two percent increased risk of ovarian

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

cancer with women who reported genital talc use.

137.    Upon information and belief, since approximately 1982, numerous additional epidemiologic studies have been conducted, which provide data regarding the association of talc and ovarian cancer, reporting an elevated risk of ovarian cancer associated with genital talc use in women.

138.    Upon information and belief, in or about 1993, the United States National Toxicology Program published a study on the toxicity of non-asbestos form talc and found clear evidence of carcinogenic activity. Talc was found to be a carcinogen, with or without the presence of asbestos-like fibers.

139.    Upon information and belief, in response to the United States National Toxicology Program's study, the Cosmetic Toiletry and Fragrance Association (CTFA), now known as the PCPC, formed the Talc Interested Party Task Force (TIPTF). Johnson & Johnson, Inc., Johnson & Johnson Consumer Incorporated, and Luzenac—now known as Imerys Talc— were members of the CTFA and involved in TIPTF. The stated purpose of TIPTF was to pool financial resources in order to collectively defend talc use at all costs and to prevent regulation of this industry. TIPTF hired scientists to perform biased research regarding the safety of talc. TIPTF members, including Johnson & Johnson and Luzenac, then edited these scientific reports before they were submitted to governmental agencies. In addition, members of TIPTF knowingly released false information about the safety of talc to the consuming public and used political and economic influence on regulatory bodies. These activities were conducted by these companies and organizations, including Johnson & Johnson and Luzenac, over the past four decades in an effort to prevent regulation of talc and to mislead the consuming public about the true hazards of talc.

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

140.    Upon information and belief, on or about November 19, 1994, the Cancer Prevention Coalition sent a letter to Ralph Larsen, then-CEO of Johnson & Johnson, urging him to substitute cornstarch for talcum powder PRODUCTS and to label its PRODUCTS with a warning on cancer risks.

141.    Upon information and belief, in or about 1996, the FDA requested that the condom industry stop dusting condoms with talc due to the health concerns that studies linked talc to ovarian cancer. Upon this request, all U.S. manufacturers discontinued the use of talc in its condom manufacturing process to reduce the potential health hazards to women.

142.    Upon information and belief, in or about 1990, the U.S. Food and Drug Administration (FDA) asked manufacturers to voluntarily stop putting talc on surgical gloves because mounting scientific evidence showed that it caused adhesions in surgical patients.

143.    Upon information and belief, in or about February 2006, the International Agency for Research on Cancer (IARC), the specialized cancer agency of the World Health Organization, published a paper that classified perineal use of talc-based body powder as a "Group 2B" human carcinogen. IARC, which is well-regarded as an international authority on cancer research, concluded that studies from around the world consistently found an increased risk of ovarian cancer in women who used talc in perineal areas. IARC determined that between 16 to 52 percent of women worldwide used talc to dust their perineum and found an increased risk of ovarian cancer in women talc users ranging from 30 to 60 percent.

144.    Upon information and belief, in or about 2006, the Canadian government, under The Hazardous PRODUCTS Act and associated Controlled PRODUCTS Regulations, classified talc as a "D2A," "very toxic," "cancer-causing" substance under its Workplace Hazardous Materials Information System (WHMIS). Asbestos is also classified as "D2A."

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

145.    Upon information and belief, in or about 2006, Imerys Talc began placing a warning on the MSDS it provided to the Johnson & Johnson Defendants, Defendant PTI Union, LLC, and Defendant PTI Royston, LLC regarding the talc it sold to them for use in the PRODUCTS. The MSDS not only provided the warning information about the IARC classification but also included warning information regarding "States Rights to Know" and warning information about the Canadian Government's D2A classification of talc.

146.    Defendant PTI Union, LLC committed active, tortious conduct in the State of Missouri in receiving said shipments of talc from Imerys, accompanied by the express ovarian cancer warning provided for in the MSDS, only for PTI Union, LLC to disregard the warning, and process, bottle, mislabel, mispackage, and distribute, without warning, the PRODUCTS out of the Union, Missouri facility, thereby creating the dangerous condition of the product in whole or in part in Missouri.

147.    Defendant PTI Union, LLC's nucleus of operations and control center was through its manufacturing facility in Union, Missouri, and its members acting out of that control center in relation to the manufacture, processing, bottling, mislabeling, and mispackaging of the PRODUCTS.

148.    Defendant PTI Union, LLC manufactured, processed, bottled, mislabeled, and mispackaged the PRODUCTS at its Union, Missouri manufacturing facility and/or controlled and directed the manufacturing, processing, bottling, mislabeling, and mispackaging at other manufacturing facilities outside of Missouri from its Union, Missouri manufacturing facility, by and through its officers, agents, and members in Missouri.

149.    Defendants engaged in relevant acts together with Defendant PTI Union, LLC in Missouri and/or Defendants are derivatively liable for Defendant PTI Union, LLC's conduct in

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

Missouri.

150.    In 2008, the Cancer Prevention Coalition submitted a "Petition Seeking a Cancer Warning on Cosmetic Talc PRODUCTS" to the FDA. The petition requested that the FDA immediately require cosmetic talcum powder PRODUCTS to bear labels with a prominent warning that frequent talc application in the female genital area is responsible for major risks of ovarian cancer.

151.    In 2013, Cancer Prevention Research published a study that showed that women who used talcum powder in their groin area had a 20 to 30 percent greater risk of developing ovarian cancer than women who did not use talc PRODUCTS in that area.

152.    Presently, the National Cancer Institute and the American Cancer Society list genital talc use as a "risk factor" for ovarian cancer.

153.    The Gilda Radner Familial Ovarian Cancer Registry, Roswell Park Center Institute, and the Department of Gynecologic Oncology University of Vermont publish a pamphlet entitled, "Myths & Facts about ovarian cancer: What you need to know." In this pamphlet, under "known" risk factors for ovarian cancer, it lists: "Use of Talc (Baby Powder) in the Genital Area."

## FEDERAL STANDARDS AND REQUIREMENTS

154.    Plaintiffs incorporate by reference all other paragraphs of this Petition as if fully set forth herein.

155.    At all relevant times, Defendants had the obligation to comply with federal standards and regulations in the manufacture, design, marketing, branding, labeling, distribution, and sale of the PRODUCTS.

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

156.    Defendants, each individually, *in solido*, and/or jointly, violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.,* Defendants have or may have failed to comply with federal standards and requirements governing the manufacture, design, marketing, branding, and sale of the PRODUCTS including, but not limited to, the following violations of sections and subsections of the United States Code and the Code of Federal Regulations:

a.    The PRODUCTS are adulterated in violation of 21 U.S.C. § 361 because, among other things, they contain a poisonous or deleterious substance which may render them injurious to users under the conditions of use prescribed in the labeling thereof, or under such conditions of use as are customary or usual.

b.    The PRODUCTS are misbranded in violation of 21 U.S.C. § 362 because, among other things, their labeling is false or misleading.

c.    The PRODUCTS are misbranded in violation 21 U.S.C. § 362 because words, statements, or other information required by or under authority of 21 U.S.C. § 362 are not prominently placed thereon with such conspicuousness and in such terms as to render them likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

d.    The PRODUCTS are misbranded in violation of 21 C.F.R. § 701.1 because they contain false or misleading representations that they are safe for daily application to all parts of the female body.

e.    The PRODUCTS do not bear a warning statement, in violation of 21 C.F.R. § 740.1, to prevent a health hazard that may be associated with

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

the PRODUCTS, namely that the PRODUCTS may cause ovarian cancer or a heightened risk of ovarian cancer when applied to the perineal area.

f.    The PRODUCTS do not prominently and conspicuously bear a warning statement, in violation of 21 C.F.R. § 740.2, as to the risk of ovarian cancer caused by the use of the PRODUCTS when applied to the perineal area, in such terms and design that it is likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

g.    The PRODUCTS, in violation of 21 C.F.R. § 740.10, do not conspicuously state on their principal display panel that the safety of the PRODUCTS have not been determined and/or that the safety of the PRODUCTS' principal ingredients have not been determined.

## COUNT ONE—STRICT LIABILITY FOR FAILURE TO WARN
### (Johnson & Johnson Defendants)

157.    Plaintiffs incorporate by reference every other paragraph of this Petition as if each were set forth fully and completely herein.

158.    At all relevant times, the Johnson & Johnson Defendants were engaged in the business of manufacturing, marketing, testing, promoting, selling and/or distributing, and otherwise introducing into the stream of interstate commerce, the PRODUCTS.

159.    At all relevant times, the Johnson & Johnson Defendants knew or should have known that the use of the PRODUCTS in the female perineal area significantly increased the risk of ovarian cancer in women based upon scientific knowledge dating back until at least 1971.

160.    At all relevant times, the PRODUCTS, manufactured and supplied by the Johnson & Johnson Defendants, were defective and unreasonably dangerous because, despite the Johnson

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

& Johnson Defendants' knowledge that its PRODUCTS were carcinogenic and could lead to an increased risk of ovarian cancer when applied to the female perineal area, a reasonably foreseeable use of the PRODUCTS, the Johnson & Johnson Defendants failed to provide adequate warning or instruction to consumers, including Plaintiffs, regarding the increased risk of ovarian cancer when the PRODUCTS are applied to the female perineal area.

161.    At all relevant times, Plaintiffs used the PRODUCTS to powder their perineal areas, a use that was reasonably foreseeable and for which the PRODUCTS were supplied.

162.    Had Plaintiffs received warning and/or instruction from the Johnson & Johnson Defendants regarding the increased risk of ovarian cancer associated with the PRODUCTS when applied to the perineal area, Plaintiffs would not have used the PRODUCTS in this manner.

163.    Due to the absence of any warning or instruction by the Johnson & Johnson Defendants as to the significant health and safety risks posed by the PRODUCTS as described herein, Plaintiffs were unaware that the PRODUCTS created an increased risk of ovarian cancer, as this danger was not known to the general public.

164.    As a direct and proximate result of Johnson & Johnson Defendants' failure to warn Plaintiffs of the increased risk of ovarian cancer associated with the PRODUCTS when applied to the perineal area, despite their actual knowledge of this material fact, Plaintiffs developed ovarian cancer and have been injured catastrophically and have been caused severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort and economic damages.

WHEREFORE, Plaintiffs pray for judgment against the Johnson & Johnson Defendants in a fair and reasonable sum in excess of $25,000.00 together with costs expended herein and such further and other relief as the Court deems just and appropriate.

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

## COUNT TWO—STRICT LIABILITY FOR FAILURE TO WARN
### (PTI Union, LLC)

165.    Plaintiff incorporates by reference every other paragraph of this Petition as if each were set forth fully and completely herein.

166.    At all relevant times, Defendant PTI Union, LLC was engaged in the business of processing, manufacturing, testing, bottling, mislabeling, mispackaging, and/or distributing, and otherwise introducing into the stream of interstate commerce, the PRODUCTS.

167.    At all relevant times, Defendant PTI Union, LLC knew or should have known that the use of the PRODUCTS in the female perineal area significantly increased the risk of ovarian cancer in women based upon scientific knowledge dating back until at least 1971.

168.    At all relevant times, the PRODUCTS, processed, manufactured, tested, bottled, mislabeled, misbranded, and/or distributed by Defendant PTI Union, LLC, were defective and unreasonably dangerous because, despite Defendant PTI Union, LLC's knowledge that its PRODUCTS were carcinogenic and could lead to an increased risk of ovarian cancer when applied to the female perineal area, a reasonably foreseeable use of the PRODUCTS, Defendant Pharma Tech failed to provide adequate warning or instruction to consumers, including Plaintiff, regarding the increased risk of ovarian cancer when the PRODUCTS are applied to the female perineal area.

169.    At all relevant times, Plaintiff used the PRODUCTS to powder her perineal areas, a use that was reasonably foreseeable and for which the PRODUCTS were supplied.

170.    Had Plaintiff received warning and/or instruction from Defendant PTI Union, LLC regarding the increased risk of ovarian cancer associated with the PRODUCTS when applied to the perineal area, Plaintiff would not have used the PRODUCTS in this manner.

171.    Due to the absence of any warning or instruction by Defendant PTI Union, LLC as to the significant health and safety risks posed by the PRODUCTS as described herein,

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

Plaintiff was unaware that the PRODUCTS created an increased risk of ovarian cancer, as this danger was not known to the general public.

172.    As a direct and proximate result of Defendant PTI Union, LLC's failure to warn Plaintiff of the increased risk of ovarian cancer associated with the PRODUCTS when applied to the perineal area, despite their actual knowledge of this material fact, Plaintiff developed ovarian cancer and have been injured catastrophically and have been caused severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort and economic damages.

WHEREFORE, Plaintiff prays for judgment against Defendant PTI Union, LLC in a fair and reasonable sum in excess of $25,000.00 together with costs expended herein and such further and other relief as the Court deems just and appropriate.

### COUNT THREE—STRICT LIABILITY FOR FAILURE TO WARN
### (PTI Royston, LLC)

173.    Plaintiff incorporates by reference every other paragraph of this Petition as if each were set forth fully and completely herein.

174.    At all relevant times, Defendant PTI Royston, LLC was engaged in the business of processing, manufacturing, testing, bottling, mislabeling, mispackaging, and/or distributing, and otherwise introducing into the stream of interstate commerce, the PRODUCTS.

175.    At all relevant times, Defendant PTI Royston, LLC knew or should have known that the use of the PRODUCTS in the female perineal area significantly increased the risk of ovarian cancer in women based upon scientific knowledge dating back until at least 1971.

176.    At all relevant times, the PRODUCTS, processed, manufactured, tested, bottled, mislabeled, misbranded, and/or distributed by Defendant PTI Royston, LLC, were defective and

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

unreasonably dangerous because, despite Defendant PTI Royston, LLC's knowledge that its PRODUCTS were carcinogenic and could lead to an increased risk of ovarian cancer when applied to the female perineal area, a reasonably foreseeable use of the PRODUCTS, Defendant Pharma Tech failed to provide adequate warning or instruction to consumers, including Plaintiff, regarding the increased risk of ovarian cancer when the PRODUCTS are applied to the female perineal area.

177.    At all relevant times, Plaintiff used the PRODUCTS to powder her perineal areas, a use that was reasonably foreseeable and for which the PRODUCTS were supplied.

178.    Had Plaintiff received warning and/or instruction from Defendant PTI Royston, LLC regarding the increased risk of ovarian cancer associated with the PRODUCTS when applied to the perineal area, Plaintiff would not have used the PRODUCTS in this manner.

179.    Due to the absence of any warning or instruction by Defendant PTI Royston, LLC as to the significant health and safety risks posed by the PRODUCTS as described herein, Plaintiff was unaware that the PRODUCTS created an increased risk of ovarian cancer, as this danger was not known to the general public.

180.    As a direct and proximate result of Defendant PTI Royston, LLC's failure to warn Plaintiff of the increased risk of ovarian cancer associated with the PRODUCTS when applied to the perineal area, despite their actual knowledge of this material fact, Plaintiff developed ovarian cancer and have been injured catastrophically and have been caused severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort and economic damages.

WHEREFORE, Plaintiff prays for judgment against Defendant PTI Royston, LLC in a fair and reasonable sum in excess of $25,000.00 together with costs expended herein and such further and other relief as the Court deems just and appropriate.

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

**COUNT FOUR—STRICT LIABILITY**
**FOR DEFECTIVE MANUFACTURE AND DESIGN**
**(Johnson & Johnson Defendants, Defendants PTI Union, LLC and PTI Royston, LLC)**

181.    Plaintiffs incorporate by reference every other paragraph of this Petition as if each were set forth fully and completely herein.

182.    At all relevant times, the Johnson & Johnson Defendants , PTI Union, LLC, and/or PTI Royston, LLC were engaged in the business of manufacturing, formulating, creating, designing, testing, labeling, packaging, supplying, marketing, promoting, selling, advertising, and otherwise introducing the PRODUCTS into the stream of interstate commerce, which they sold and distributed throughout the United States.

183.    At all relevant times, the PRODUCTS were expected to and did reach Plaintiff without a substantial change in condition.

184.    At all relevant times, the PRODUCTS were defectively and improperly manufactured and designed by the Johnson & Johnson Defendants, PTI Union, LLC, and/or PTI Royston, LLC in that, when the PRODUCTS left the hands of the Johnson & Johnson Defendants, PTI Union, LLC, and/or PTI Royston, LLC, the foreseeable risks of the PRODUCTS far outweighed the benefits associated with their design and formulation.

185.    At all relevant times, the PRODUCTS were defectively manufactured and designed by the Johnson & Johnson Defendants, PTI Union, LLC, and/or PTI Royston, LLC in that their design and formulation is more dangerous than an ordinary consumer would expect when used in an intended and reasonably foreseeable manner.

186.    At all relevant times, the PRODUCTS created significant risks to the health and safety of consumers that far outweigh the risks posed by other products on the market used for the same therapeutic purpose.

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

187.    At all relevant times, a reasonable and safer alternative design existed, which could have feasibly been employed by the Johnson & Johnson Defendants, PTI Union, LLC, and/or PTI Royston, LLC to manufacture a product with the same therapeutic purpose as the PRODUCTS. Despite knowledge of this reasonable and safer alternative design, the Johnson & Johnson Defendants, PTI Union, LLC, and/or PTI Royston, LLC failed to alter the PRODUCTS' design and formulation. The magnitude of the danger created by the PRODUCTS far outweighs the costs associated with using an alternative, safer design.

188.    As a direct and proximate result of the defective design and manufacture of the PRODUCTS, Plaintiffs developed ovarian cancer and have been injured catastrophically and have been caused severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort and economic damages.

WHEREFORE, Plaintiffs pray for judgment against Johnson & Johnson Defendants, PTI Union, LLC, and/or PTI Royston, LLC in a fair and reasonable sum in excess of $25,000.00 together with costs expended herein and such further and other relief as the Court deems just and appropriate.

### COUNT FIVE—NEGLIGENCE
### (Johnson & Johnson Defendants, PTI Union, LLC and PTI Royston, LLC)

189.    Plaintiffs incorporate by reference every other paragraph of this Petition as if each were set forth fully and completely herein.

190.    At all relevant times, the Johnson & Johnson Defendants, PTI Union, LLC, and/or PTI Royston, LLC breached their duty to Plaintiffs and were otherwise negligent in marketing, designing, manufacturing, producing, supplying, inspecting, testing, selling and/or distributing the PRODUCTS in one or more of the following respects.

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

a. In failing to warn Plaintiffs of the hazards associated with the use of the PRODUCTS;

b. In failing to properly test their products to determine adequacy and effectiveness or safety measures, if any, prior to releasing the PRODUCTS for consumer use;

c. In failing to properly test the PRODUCTS to determine the increased risk of ovarian cancer during the normal and/or intended use of the PRODUCTS;

d. In failing to inform ultimate users, such as Plaintiffs, as to the safe and proper methods of handling and using the PRODUCTS;

e. In failing to remove the PRODUCTS from the market when the Defendants knew or should have known the PRODUCTS were defective;

f. In failing to instruct the ultimate users, such as Plaintiffs, as to the methods for reducing the type of exposure to the PRODUCTS which caused increased risk of ovarian cancer;

g. In failing to inform the public in general and the Plaintiffs in particular of the known dangers of using the PRODUCTS for dusting the perineum;

h. In failing to advise users how to prevent or reduce exposure that caused an increased risk for ovarian cancer;

i. In marketing and labeling the PRODUCTS as safe for all uses despite knowledge to the contrary;

j. In failing to act like a reasonably prudent company under similar circumstances;

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

k.      In failing to use a safer alternative to talc in the PRODUCTS, such as cornstarch.

Each and all of these acts and omissions, taken singularly or in combination, were a proximate cause of the injuries and damages sustained by Plaintiffs.

191.    At all relevant times, the Johnson & Johnson Defendants, PTI Union, LLC, and/or PTI Royston, LLC knew or should have known that the PRODUCTS were unreasonably dangerous and defective when put to their reasonably anticipated use.

192.    As a direct and proximate result of the Johnson & Johnson Defendants, PTI Union, LLC, and/or PTI Royston, LLC's negligence, Plaintiffs purchased and used the PRODUCTS that directly and proximately caused each Plaintiff to develop ovarian cancer. As a direct and proximate result, Plaintiffs were caused to incur medical bills, lost wages, and conscious pain and suffering.

WHEREFORE, Plaintiffs pray for judgment against the Johnson & Johnson Defendants, PTI Union, LLC, and/or PTI Royston, LLC in a fair and reasonable sum in excess of $25,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT SIX—BREACH OF EXPRESS WARRANTY
### (Johnson & Johnson Defendants)

193.    Plaintiffs incorporate by reference every other paragraph of this Petition as if each were set forth fully and completely herein.

194.    At all relevant times, the Johnson & Johnson Defendants knew or should have known that the PRODUCTS were unreasonably dangerous and defective when put to their reasonably anticipated use.

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

195.     At all relevant times, the Johnson & Johnson Defendants expressly warranted, through direct-to-consumer marketing, advertisements, and labels, that the PRODUCTS were safe and effective for reasonably anticipated uses, including use by women in their perineal area.

196.     The labeling and advertisements for the PRODUCTS include, but are not limited to, the following statements: "For you, use every day to help feel soft, fresh, and comfortable;" "A sprinkle a day keeps the odor away;" "Your body perspires in more places than just under your arms; "Use SHOWER to SHOWER to feel dry, fresh and comfortable throughout the day;" and "SHOWER to SHOWER can be used all over your body."

197.     In particular, the Johnson & Johnson Defendants advertised the product SHOWER to SHOWER to be applied "all over," and suggested that women use it to "Soothe Your Skin: Sprinkle on problem areas to soothe skin that has been irritated from friction. Apply after a bikini wax to help reduce irritation and discomfort."

198.     At all relevant times, Plaintiffs were deceived by Defendants' intentional misrepresentations and omissions, including by the orchestrated claims made on or in television commercials, advertising materials, websites, and on product labels and packaging regarding the usage and safety of the PRODUCTS.

199.     At all relevant times, Plaintiffs acted in reasonable reliance upon the Johnson & Johnson Defendants' unlawful trade practices, and had the Johnson & Johnson Defendants not engaged in the deceptive conduct described herein, Plaintiffs would not have purchased and/or received the PRODUCTS.

200.     At all relevant times, the PRODUCTS did not conform to these express representations because they cause serious injury, including ovarian cancer, when used by women in the perineal area.

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

201.    As a direct and proximate result of the Defendants' breach of warranty, Plaintiffs purchased and used the PRODUCTS that directly and proximately caused each Plaintiff to develop ovarian cancer. Plaintiffs were caused to incur medical bills, lost wages, and conscious pain and suffering.

WHEREFORE, Plaintiffs pray for judgment against the Johnson & Johnson Defendants in a fair and reasonable sum in excess of $25,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT SEVEN—BREACH OF IMPLIED WARRANTIES
### (All Defendants)

202.    Plaintiffs incorporate by reference each of the preceding paragraphs as if fully set forth herein.

203.    At the time the Defendants manufactured, marketed, labeled, promoted, distributed and/or sold the PRODUCTS, the Johnson & Johnson Defendants knew of the uses for which the PRODUCTS were intended, including use by women in the perineal area. With this knowledge, they impliedly warranted the PRODUCTS to be of merchantable quality and safe for such use.

204.    Defendants breached their implied warranties of the PRODUCTS sold to Plaintiffs because they were not fit for their common, ordinary and intended uses, including use by women in the perineal area.

205.    As a direct and proximate result of the Johnson & Johnson Defendants' breach of implied warranties, Plaintiffs purchased and used the PRODUCTS that directly and proximately caused each Plaintiff to develop ovarian cancer. As a result, Plaintiffs were caused to incur medical bills, lost wages, and conscious pain and suffering.

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

WHEREFORE, Plaintiffs pray for judgment against the Johnson & Johnson Defendants, Imerys Talc America, Inc., Defendant PTI Union, LLC, and Defendant PTI Royston, LLC in a fair and reasonable sum in excess of $25,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT EIGHT—CIVIL CONSPIRACY
### (All Defendants)

206.    Plaintiffs incorporate by reference every other paragraph of this Petition as if each were set forth fully and completely herein.

207.    Defendants and/or their predecessors-in-interest knowingly agreed, contrived, combined, confederated and conspired among themselves to cause Plaintiffs' injuries, diseases, and/or illnesses by exposing the Plaintiffs to harmful and dangerous PRODUCTS. Defendants further knowingly agreed, contrived, confederated and conspired to deprive the Plaintiffs of the opportunity of informed free choice as to whether to use the PRODUCTS or to expose themselves to the stated dangers. Defendants committed the wrongs as described herein by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of and exposure to the PRODUCTS.

208.    In furtherance of said conspiracies, Defendants performed the following overt acts:

a.    For many decades, Defendants, individually, jointly, and in conspiracy with each other, have been in possession of medical and scientific data, literature and test reports that clearly indicated that use of their by women resulting from ordinary and foreseeable use of the PRODUCTS were unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly;

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

b.      Despite the medical and scientific data, literature, and test reports possessed by and available to Defendants, Defendants individually, jointly, and in conspiracy with each other, fraudulently, willfully and maliciously:

   i.      Withheld, concealed and suppressed said medical information regarding the increased risk of ovarian cancer from Plaintiffs, as described above; In addition, on July 27, 2005, Defendants, as part of the TIPTF, corresponded about and agreed to edit and delete portions of scientific papers being submitted on their behalf to the United States Toxicology Program in an attempt to prevent talc from being classified as a carcinogen;

   ii.     Instituted a "defense strategy" through the TIPTF to defend talc at all costs. In furtherance of this defense strategy, Defendants, through the TIPTF, used their influence over the National Toxicology Program ("NTP') Subcommittee and the threat of litigation against the NTP to prevent the NTP from classifying talc as a carcinogen on its 10th Report on Carcinogens ("RoC");

   iii.    Caused to be released, published and disseminated medical and scientific data, literature, and test reports containing information and statements regarding the risks of ovarian cancer which Defendants knew were incorrect, incomplete, outdated, and misleading. Specifically, Defendants, through the TIPTF, collectively agreed to release false information to the public

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

regarding the safety of talc on July 1, 1992; July 8, 1992; and November 17, 1994. In a letter dated September 17, 1997, the Defendants were criticized by their own toxicologist consultant for releasing this false information to the public, yet nothing was done by the Defendants to correct or redact this public release of knowingly false information.

c.  By these false and fraudulent representations, omissions, and concealments, Defendants intended to induce and did induce the Plaintiffs to rely upon these false and fraudulent representations, omissions and concealments, and to continue to expose themselves to the dangers inherent in the use of and exposure to the PRODUCTS.

209.  Plaintiffs reasonably and in good faith relied upon the fraudulent representations, omissions, and concealments made by Defendants regarding the nature of the PRODUCTS.

210.  As a direct, foreseeable and proximate result of the Defendants' conspiracy, Plaintiffs purchased and used the PRODUCTS in the perineal areas, which directly and proximately caused each Plaintiff to develop ovarian cancer. Plaintiffs were caused to incur medical bills, lost wages, and conscious pain and suffering.

WHEREFORE, Plaintiffs pray for judgment against all Defendants, jointly and severely, in a fair and reasonable sum in excess of $25,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT NINE—CONCERT OF ACTION
### (All Defendants)

211.  Plaintiffs incorporate by reference every other paragraph of this Petition as if each were set forth fully and completely herein.

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

212.    At all relevant times, Imerys Talc and the Johnson & Johnson Defendants knew that the PRODUCTS should contain warnings about the risk of ovarian cancer when women used the PRODUCTS to powder the perineal region, but they purposefully suppressed this information and omitted warnings from the PRODUCTS. They did so to maintain sales and profits of the Johnson & Johnson Defendants and Imerys Talc.

213.    As a direct, foreseeable and proximate result of the Defendants' concert of action, Plaintiffs purchased and used the PRODUCTS in their perineal areas. As a direct and proximate result of such use, each Plaintiff developed ovarian cancer, and Plaintiffs were caused to incur medical bills, lost wages, and conscious pain and suffering.

WHEREFORE, Plaintiffs pray for judgment against all Defendants, jointly and severely, in a fair and reasonable sum in excess of $25,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT TEN—FRAUD
### (Johnson & Johnson Defendants)

214.    Plaintiffs incorporate by reference every other paragraph of this Petition as if each were set forth fully and completely herein.

215.    At all relevant times, the Johnson & Johnson Defendants intentionally, willfully, and/or recklessly, with the intent to deceive, misrepresented and/or concealed material facts to consumers and users, including Plaintiffs.

216.    At all relevant times, the Johnson & Johnson Defendants misrepresented and/or concealed material facts concerning the PRODUCTS to consumers, including the Plaintiffs, with knowledge of the falsity of their misrepresentations.

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

217.    At all relevant times, upon information and belief, the misrepresentations and concealments concerning the PRODUCTS made by the Johnson & Johnson Defendants include, but are not limited to the following:

a.    The Johnson & Johnson Defendants falsely labeled and advertised the PRODUCTS in the following ways, among others: "For you, use every day to help feel soft, fresh, and comfortable," "a sprinkle a day keeps the odor away," "your body perspires in more places than just under your arms," "Use SHOWER to SHOWER to feel dry, fresh, and comfortable throughout the day," and "SHOWER to SHOWER can be used all over your body."

b.    The Johnson & Johnson Defendants falsely advertised the PRODUCT SHOWER to SHOWER to be applied "all over," and in particular, urges women to use it to "Soothe Your Skin: Sprinkle on problem areas to soothe skin that has been irritated from friction. Apply after a bikini wax to help reduce irritation and discomfort."

c.    The Johnson & Johnson Defendants, through the advertisements described above, knowingly misrepresented to Plaintiff and the public that the PRODUCTS were safe for use all over the body, including the perineal areas of women.

d.    The Johnson & Johnson Defendants intentionally failed to disclose that talc and the associated PRODUCTS, when used in the perineal area, increase the risk of ovarian cancer.

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

e.     The Johnson & Johnson Defendants intentionally failed to include adequate warnings with the PRODUCTS regarding the potential and actual risks of using the PRODUCTS in the perineal area on women and the nature, scope, severity, and duration of any serious injuries resulting therefrom.

f.     Despite knowing about the carcinogenic nature of talc and its likelihood to increase the risk of ovarian cancer in women, the Johnson & Johnson Defendants falsely marketed, advertised, labeled and sold the PRODUCTS as safe for public consumption and usage, including for use by women to powder their perineal areas.

218.    At all relevant times, the Johnson & Johnson Defendants actively, knowingly, and intentionally concealed and misrepresented these material facts to the consuming public with the intent to deceive the public and Plaintiffs, and with the intent that the consumers would purchase and use the PRODUCTS in the female perineal area.

219.    At all relevant times, the consuming public, including Plaintiffs, would not otherwise have purchased the PRODUCTS and/or applied the PRODUCTS in the perineal area if they had been informed of the risks associated with the use of the PRODUCTS in the perineal area.

220.    At all relevant times, Plaintiffs relied on the Johnson & Johnson Defendants' misrepresentations concerning the safety of the PRODUCTS when purchasing the PRODUCTS and using them in her perineal area, and her reliance was reasonable and justified.

221.    As a direct, foreseeable and proximate result of the Johnson & Johnson Defendants' fraudulent conduct, Plaintiffs purchased and used the PRODUCTS in their perineal

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

areas. As a direct and proximate result of such use, each Plaintiff developed ovarian cancer, and Plaintiffs were caused to incur medical bills, lost wages, and conscious pain and suffering.

WHEREFORE, Plaintiffs pray for judgment against all Defendants, jointly and severely, in a fair and reasonable sum in excess of $25,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

### COUNT ELEVEN—CONCEALMENT
### (Johnson & Johnson Defendants)

222.    Plaintiff incorporates by reference every other paragraph of this Petition as if each were set forth fully and completely herein.

223.    At all relevant times, the Johnson & Johnson Defendants intentionally, willfully, and/or recklessly, with the intent to deceive, misrepresented and concealed material facts to consumers and users, including Plaintiffs.

224.    At all relevant times, the Johnson & Johnson Defendants misrepresented and concealed material facts concerning the PRODUCTS to consumers, including the Plaintiffs, with knowledge of the falsity of their misrepresentations.

225.    At all relevant times, upon information and belief, the misrepresentations and concealments concerning the PRODUCTS made by the Johnson & Johnson Defendants include, but are not limited to the following:

a.    Withheld, concealed and suppressed medical and scientific data, literature, and test reports regarding the increased risk of ovarian cancer from Plaintiffs, as described above;

b.    As part of the TIPTF, corresponded about and agreed to edit and delete portions of scientific papers being submitted on their behalf to the United

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

States Toxicology Program in an attempt to prevent talc from being

classified as a carcinogen;

c.   Instituted a "defense strategy" through the TIPTF to defend talc at all costs. In

furtherance of this defense strategy, Defendants, through the TIPTF, used

their influence over the National Toxicology Program ("NTP') Subcommittee

and the threat of litigation against the NTP to prevent the NTP from

classifying talc as a carcinogen on its 10th Report on Carcinogens ("RoC");

d.   Caused to be released, published and disseminated medical and scientific

data, literature, and test reports containing information and statements

regarding the risks of ovarian cancer which Defendants knew were incorrect,

incomplete, outdated, and misleading. Specifically, Defendants, through the

TIPTF, collectively agreed to release false information to the public

regarding the safety of talc on July 1, 1992; July 8, 1992; and November 17,

1994. In a letter dated September 17, 1997, the Defendants were criticized by

their own toxicologist consultant for releasing this false information to the

public, yet nothing was done by the Defendants to correct or redact this

public release of knowingly false information.

e.   By these false and fraudulent representations, omissions, and concealments,

Defendants intended to induce and did induce the Plaintiffs to rely upon

these false and fraudulent representations, omissions and concealments, and

to continue to expose themselves to the dangers inherent in the use of and

exposure to the PRODUCTS.

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

   f. Knowingly misrepresented to Plaintiffs and the public that the PRODUCTS were safe for use all over the body, including the perineal areas of women.

226. At all relevant times, the Johnson & Johnson Defendants actively, knowingly, and intentionally concealed and misrepresented these material facts to the consuming public with the intent to deceive the public and Plaintiffs, and with the intent that the consumers would purchase and use the PRODUCTS in the female perineal area.

227. At all relevant times, the consuming public, including Plaintiffs, would not otherwise have purchased the PRODUCTS and/or applied the PRODUCTS in the perineal area if they had been informed of the risks associated with the use of the PRODUCTS in the perineal area.

228. At all relevant times, Plaintiffs relied on the Johnson & Johnson Defendants' misrepresentations and concealment concerning the safety of the PRODUCTS when purchasing the PRODUCTS and using them in her perineal area, and their reliance was reasonable and justified.

229. As a direct, foreseeable and proximate result of the Johnson & Johnson Defendants' conduct, Plaintiffs purchased and used the PRODUCTS in their perineal areas. As a direct and proximate result of such use, each Plaintiff developed ovarian cancer, and Plaintiff was caused to incur medical bills, lost wages, and conscious pain and suffering.

WHEREFORE, Plaintiffs pray for judgment against all the Johnson & Johnson Defendants in a fair and reasonable sum in excess of $25,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

### COUNT TWELVE—NEGLIGENT MISREPRESENTATION
#### (Johnson & Johnson Defendants)

230. Plaintiff incorporates by reference every other paragraph of this Petition as if each were

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

set forth fully and completely herein.

231.    As a direct, foreseeable and proximate result of the Defendants' fraudulent conduct, Plaintiffs purchased and used the PRODUCTS in their perineal areas.  As a direct and proximate result of such use, each Plaintiff developed ovarian cancer, and Plaintiffs were caused to incur medical bills, lost wages, and conscious pain and suffering.

232.    Defendants had a duty to accurately and truthfully represent to the medical and healthcare community, Plaintiffs and the public that the PRODUCTS had been tested and found to be safe and effective for use in the perineal area. However, the representations made by Defendants, in fact, were false.

233.    Defendants failed to exercise ordinary care in the representations concerning the PRODUCTS while they were involved in their manufacture, sale, testing, quality assurance, quality control, and distribution in interstate commerce, because Defendants negligently misrepresented the PRODUCTS' high risk of unreasonable, dangerous, adverse side effects.

234.    Defendants breached their duty in representing that the PRODUCTS were safe for use in the perineal areas of women.

235.    At all relevant times, upon information and belief, the misrepresentations, omissions and concealments concerning the PRODUCTS made by the Defendants include, but are not limited to the following:

a.    The Johnson & Johnson Defendants labeled and advertised the PRODUCTS in the following ways, among others: "For you, use every day to help feel soft, fresh, and comfortable;" "A sprinkle a day keeps the odor away;" "Your body perspires in more places than just under your arms;" "Use SHOWER to

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

SHOWER to feel dry, fresh, and comfortable throughout the day; and "SHOWER to SHOWER can be used all over your body."

b.    The Johnson & Johnson Defendants advertised the product SHOWER to SHOWER to be applied "all over," and in particular, urged women to use it to "Soothe Your Skin: Sprinkle on problem areas to soothe skin that has been irritated from friction. Apply after a bikini wax to help reduce irritation and discomfort."

c.    Defendants, through the advertisements described above, among others, misrepresented to consumers, including the Plaintiffs, that the PRODUCTS were safe for use all over the body, including the female perineal area.

d.    Despite actual knowledge of the health risks of the PRODUCTS, the Defendants failed to disclose to the consumers and the Plaintiffs, through adequate warnings, representations, labeling, or otherwise, that the PRODUCTS were inherently dangerous and carcinogenic in nature, which poses serious health risks to consumers.

e.    Despite actual knowledge that the use of the PRODUCTS in the perineal area created a significantly increased risk of ovarian cancer, the Defendants failed to disclose to consumers and the Plaintiff, through adequate warnings, representations, labeling, or otherwise, that material fact.

f.    Despite knowing about the carcinogenic nature of talc and its likelihood to increase the risk of ovarian cancer in women, the Johnson & Johnson Defendants falsely marketed, advertised, labeled and sold the PRODUCTS

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

as safe for public consumption and usage, including for use by women to powder their perineal areas.

236.    At all relevant times, Defendants failed to exercise reasonable care in ascertaining or sharing information regarding the safe use of PRODUCTS, failed to disclose facts indicating that the PRODUCTS were inherently dangerous and carcinogenic in nature, and otherwise failed to exercise reasonable care in communicating the information concerning the PRODUCTS to Plaintiff and/or concealed relevant facts that were known to them.

237.    At all relevant times, Plaintiffs were not aware of the falsity of the foregoing misrepresentations, nor was she aware that material facts concerning talc and the PRODUCTS had been concealed or omitted. In reasonable reliance upon the Johnson & Johnson Defendants' misrepresentations and/or omissions, Plaintiffs were induced to and did purchase the PRODUCTS and did use the PRODUCTS on her perineal area. If the Defendants had disclosed true and accurate material facts concerning the risks of the use of the PRODUCTS, in particular the risk of developing ovarian cancer from using the PRODUCTS in the female perineal area, Plaintiffs would not have purchased and/or received the PRODUCTS and/or used the PRODUCTS in that manner.

238.    Plaintiffs' reliance upon the Defendants' misrepresentations and omissions was justified and reasonable because, among other reasons, those misrepresentations and omissions were made by individuals and entities who were in a position to know the material facts concerning the PRODUCTS and the association between the PRODUCTS and the incidence of ovarian cancer, while Plaintiff was not in a position to know these material facts, and because the Johnson & Johnson Defendants failed to warn or otherwise provide notice to the consuming public as to the risks of the PRODUCTS, thereby inducing Plaintiff to use the PRODUCTS in lieu of

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

safer alternatives and in ways that created unreasonably dangerous risks to her health. At all relevant times, the Defendants' corporate officers, directors, and/or managing agents knew of and ratified the acts of the Johnson & Johnson Defendants, as alleged herein.

239.    As a direct and proximate result of Defendants' conduct, Plaintiffs have been injured and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care and comfort, and economic damages.

WHEREFORE, Plaintiffs demand judgment against Defendants, individually, jointly, severally, and in the alternative, requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

**COUNT THIRTEEN—WRONGFUL DEATH**
**(All Defendants)**

240.    Plaintiffs incorporate by reference every other paragraph of this Petition as if each were set forth fully and completely herein.

241.    As a direct and proximate result of the acts and/or omissions of Defendants as set forth herein, the Decedents named in this action used the PRODUCTS in their perineal areas. Subsequent to such use, Decedents developed ovarian cancer, suffered substantial pain and suffering, both physical and emotional in nature, and subsequently died.

242.    Plaintiffs, on behalf of themselves and all of the next of kin of Decedents, are entitled to recover damages as Decedents would have if they were living, as a result of acts and/or omissions of Defendants.

243.    Plaintiffs, on behalf of themselves and all of Decedents' next of kin are also entitled to recover punitive damages and damages for substantial pain and suffering caused to

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

Decedents from the acts and/or omissions of Defendants as fully set forth herein, including without limitations, punitive damages.

244.    As a direct and proximate result of Defendants' conduct, Plaintiffs and Decedents have been injured and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care and comfort, and economic damages.

WHEREFORE, Plaintiffs demand judgment against Defendants, individually, jointly, severally, and in the alternative, requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

### COUNT FOURTEEN—PUNITIVE DAMAGES
### (All Defendants)

245.    Plaintiffs incorporate by reference every other paragraph of this Petition as if each were set forth fully and completely herein.

246.    The Defendants have acted willfully, wantonly, maliciously, with an evil motive, and recklessly in one or more of the following ways:

    a.    Defendants knew of the unreasonably high risk of ovarian cancer posed by the PRODUCTS before manufacturing, marketing, distributing and/or selling the PRODUCTS, yet purposefully proceeded with such action;

    b.    Despite their knowledge of the high risk of ovarian cancer associated with the PRODUCTS, Defendants affirmatively minimized this risk through marketing and promotional efforts and product labeling;

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

c.     Through the actions outlined above, Defendants expressed a reckless indifference to the safety of users of the PRODUCTS, including Plaintiffs. Defendants knew of the dangers and risks of the PRODUCTS, yet they concealed and/or omitted this information from labels and warnings contained on the PRODUCTS in furtherance of their conspiracy and concerted action. These actions were outrageous because of Defendants' evil motive or a reckless indifference to the safety of users of the PRODUCTS.

247.     As a direct and proximate result of the willful, wanton, malicious, evilly motivated and/or reckless conduct of the Defendants, the Plaintiffs have sustained damages as set forth above.

WHEREFORE, Plaintiffs pray for a judgment for punitive damages against all Defendants, jointly and severally, in a fair and reasonable amount sufficient to punish Defendants and deter them and others from engaging in similar conduct in the future, costs expended herein, and such further and other relief as the Court deems just and appropriate.

### COUNT FIFTEEN—DAMAGES
### (Against All Defendants)

248.     Plaintiffs incorporate by reference every other paragraph of this Petition as if each were set forth fully and completely herein.

249.     Defendants knew of the dangerous condition of the PRODUCTS, including that they posed a danger to their consumers, including Plaintiffs, but chose not to include any warnings or information regarding the dangerous condition of the PRODUCTS.

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

250.    Defendants showed complete indifference to or conscious disregard of the safety of Plaintiffs by their conduct described herein. Defendants knew or should have known failure to include a warning for the PRODUCTS would result in women using the PRODUCTS in their perineal areas and subsequently developing ovarian cancer.

251.    Plaintiffs are entitled to exemplary damages to punish Defendants and to deter Defendants and others in similar situations from like conduct.

WHEREFORE, Plaintiffs pray for judgment against Defendants for exemplary damages for the aggravating circumstances of decedents' deaths, to punish Defendants, and to deter Defendants and others from like conduct, and such other and further relief as this Court deems just, proper, and equitable.

## TOLLING STATUTE OF LIMITATIONS

252.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

253.    Plaintiffs have suffered an illness that has a latency period and does not arise until many years after exposure. Plaintiffs' illnesses did not distinctly manifest themselves until they were made aware that their ovarian cancer could be caused by their use of the Defendants' PRODUCTS. Consequently, the discovery rule applies to these cases, and the statute of limitations has been tolled until the day that Plaintiffs knew or had reason to know that their ovarian cancer was linked to their use of the Defendants' PRODUCTS.

254.    Furthermore, the running of any statute of limitations has been equitably tolled by reason of Defendants' fraudulent concealment and conduct. Through their affirmative misrepresentations and omissions, Defendants actively concealed from Plaintiffs the true risks associated with PRODUCTS.

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

255.    As a result of Defendants' actions, Plaintiffs were unaware, and could not reasonably know or have learned through reasonable diligence, that Plaintiffs had been exposed to the risks alleged herein and that those risks were the direct and proximate result of Defendants' acts and omissions.

256.    Furthermore, Defendants are estopped from relying on any statute of limitations because of their concealment of the truth regarding the safety of PRODUCTS. Defendants were under a duty to disclose the true character, quality and nature of PRODUCTS because this was non-public information over which they continue to have exclusive control. Defendants knew that this information was not available to Plaintiffs, their medical providers and/or their health facilities, yet they failed to disclose the information to the public.

257.    Defendants had the ability to and did spend enormous amounts of money in furtherance of their purposes of marketing and promoting a profitable product, notwithstanding the known or reasonably knowable risks. Plaintiffs and medical professionals could not have afforded to and could not have possibly conducted studies to determine the nature, extent and identity of related health risks, and they were forced to rely on Defendants' representations.

Dated: April 15, 2021                    Respectfully submitted,


DONALD L. SCHLAPPRIZZI, P.C.
Attorneys for Plaintiff

/s/Craig Anthony Schlapprizzi
By:    Craig Anthony Schlapprizzi, #62309
       211 N. Broadway, Suite 2430
       St. Louis, Missouri, 63102
       314-241-0763
       314-241-0787 (fax)
       craig@schlapprizzipc.com

Electronically Filed - St Louis County - April 15, 2021 - 11:52 PM

Jennifer A. Lenze, SBN 246858
LENZE LAWYERS, PLC
1300 Highland Ave, Suite 207
Manhattan Beach, CA 90266
Telephone (310) 322-8800
Facsimile (310) 322-8811
jlenze@lenzelawyers.com
Attorneys for Plaintiffs

Mark P. Robinson, Jr., Esq., State Bar No. 54426
Kevin F. Calcagnie, Esq. State Bar No. 108994
ROBINSON CALCAGNIE, INC.
19 Corporate Plaza Drive
Newport Beach, CA 92660
Tel.: (949) 720-1288
Fax: (949) 720-1292
mrobinson@robinsonfirm.com
kcalcagnie@robinsonfirm.com

Attorneys for Plaintiffs